This is an action for malicious prosecution The plaintiff was arrested in Toledo, Ohio, charged with the commission of the misdemeanor of riding on a railroad train without paying his fare. Upon the hearing he was discharged.
In this action against the New York Central Railroad Company he was awarded a verdict by the jury, but the judgment entered thereon was reversed by the Appellate Division, and his complaint dismissed upon the ground that as a matter of law there was probable cause for his arrest. As upon this record we think the question of probable cause was one for the jury, I will briefly refer to the evidence.
The plaintiff, a resident of the city of New York, was a traveling salesman for the Parisian Slipper Company, his territory covering the big cities in Ohio, Illinois, *Page 139 
Michigan and Pennsylvania. Having customers in Toledo, Ohio, whom it was necessary for him to see, he bought a ticket of the defendant at its ticket office in Buffalo, New York, on the ninth day of May, 1921, for Toledo. He also purchased a Pullman ticket. On his railroad ticket he checked two small sample cases through to Toledo, and received checks therefor. The train was a through train to Toledo which changed conductors at Cleveland. When the first conductor, named Newton, came through the train after leaving Buffalo, he took the plaintiff's ticket and did not give it back to him. When the other conductor, named Null, got on the train at Cleveland, he asked the plaintiff for his ticket and was told that the first conductor had taken it before the train reached Cleveland and had not given it back to him. Thereupon the conductor said: "Well, I have got to have a ticket or else you will have to pay your fare; and if you do not pay your fare, I will have to put you off." The plaintiff said: "Well, you go ahead and put me off." Later the conductor came back and said to the plaintiff: "I am going to wire to Cleveland to find out whether the other conductor had picked up a Toledo ticket, and if he did not, you will have to pay your fare, or else I am going to put you off." Again the conductor came back and said: "The other conductor did not pick up any Toledo ticket; we have not got it, and you will have to pay your fare, or else I will have to put you off." There was a railroad detective on the train who also talked to the plaintiff and asked him to pay his fare, and again the plaintiff explained to him that he had paid his fare, and had given the ticket to the first conductor who failed to give it back. He showed the detective his baggage checks for his baggage shipped through to Toledo, which at least was some indication that the plaintiff had purchased a ticket through to that point. Baggage is checked to point of destination on passenger tickets. The conversation between the *Page 140 
detective and the plaintiff was this: The plaintiff said: "I certainly could not check my baggage through to Toledo unless I had a railroad ticket, and I certainly could not get a Pullman unless I showed my railroad ticket also." The detective replied: "That makes no difference, you have got to pay your fare. Otherwise I will put you off at Toledo." The baggage checks were Nos. 78,998, 78,996. The name of the baggage master at Buffalo from whom the plaintiff procured these checks was McMahon. Without objection plaintiff offered in evidence a telegram received by him while at Toledo from McMahon reading as follows:
"May 11 1921
"JOSEPH HYMAN
"Secor Hotel Toledo O.
"Ticket three four six one destined Toledo used connection baggage checks 78998 and 96
"M McMAHON"
When the plaintiff arrived at Toledo, he was arrested on the complaint of Conductor Null, taken to the police station in a patrol wagon, held in bail for a hearing on the charge of riding upon railroad trains without paying his fare, and on the hearing was discharged.
By the plaintiff's evidence it appeared, therefore, that he had purchased a ticket from Buffalo to Toledo; the train was a through train, the conductor took his ticket and did not give it back. So far as the evidence shows, there was nothing surprising about this, as the plaintiff apparently did not know anything about the change of conductors at Cleveland, or the necessity to show his ticket again. After leaving Cleveland, another conductor demanded his ticket and was not satisfied with the plaintiff's explanation that he had given his ticket to the first conductor and had not received it back. To confirm his story the plaintiff showed the conductor his two baggage checks, and it is uncontradicted that baggage would not be shipped through to Toledo, Ohio, unless *Page 141 
the baggage master saw the plaintiff's ticket through to the same place. The plaintiff also showed the conductor his Pullman tickets to Toledo. The conductor told the plaintiff that he had telegraphed the first conductor and that the latter did not have a Toledo ticket.
To meet this evidence on behalf of the plaintiff, Null, the second conductor, differs little in his testimony from the plaintiff, except that he says that he showed to the plaintiff the telegram which he had received from Newton, the first conductor. Null swears that he telegraphed Newton and received a reply that he, Newton, did not have a Toledo ticket in his bunch of tickets. Newton swears that while he was in the office at Cleveland making up his report, he received a telegram from Null, examined his bunch of tickets, and could find no Toledo ticket. He answered Null's telegram accordingly. Apparently these telegrams, or copies of them, were in court, as references were made to them upon the trial. They were apparently offered in evidence and then, for some reason which does not clearly appear upon the record, were withdrawn. The fact is, they were not introduced in evidence. Why the defendant should not have put them in evidence is difficult to understand. Null is charged with having acted without probable cause in arresting Hyman. The facts and information upon which he acted were material and competent, whether the plaintiff knew them or not. Null's telegram to Newton, and Newton's reply were competent evidence as showing information upon which Null acted. However, the telegrams are not in evidence. Null says he telegraphed, and Newton so testifies. Both these witnesses were interested witnesses. If Newton had a Toledo ticket, it was his mistake in keeping it. He had no right to it. He should have given it back to the plaintiff if he had collected it. Whether, therefore, the testimony of these witnesses be correct, was a matter for the jury to pass upon. *Page 142 
Even assuming, however, that the telegrams were produced and were to the effect that Newton had no Toledo ticket in his bunch of tickets, yet it would still remain a question for the jury to say whether or not Null acted as a reasonably prudent man would have acted under all the circumstances, in having the plaintiff arrested charged with a crime. Considering that Newton, the first conductor, if he had kept the Toledo ticket, failed in his duty, both to his company and to the passenger, can we say as a matter of law that Null, the second conductor, was justified in charging Hyman with a crime because Newton telegraphed him that he could not find the Toledo ticket in his bunch of tickets? To meet this statement of Newton, the plaintiff had his baggage checks to show that his baggage had been shipped from Buffalo to Toledo, and the court had the uncontradicted evidence that this could not be done without showing a ticket, a passenger ticket, through to the same place. Null further says that he called the plaintiff's attention to the rule on the time-table reading as follows: "Information. Adjustment of fares. In case of dispute with conductors or agents, pay fare required, take receipt and communicate with General Passenger Agent, New York, N.Y." He also says that he told the plaintiff he would give him a receipt for his fare under this rule. The plaintiff denies that Null told him any such thing or that he knew anything about this rule or had ever read it.
When a passenger fails to pay his fare, or show his ticket, or comply with other reasonable rules and regulations of the railroad company, it has been held by this court that he can be asked to leave the train and, under reasonable conditions, be put off the train if he refuses to leave peaceably. If a wrong be done him he can sue for damages. (Monnier v. N.Y.C. H.R.R.R.Co., 175 N.Y. 281.) To charge a passenger, however, with the commission of a crime, which means the willful act of riding on a train intentionally without a ticket, is *Page 143 
another matter. To justify such conduct, it must appear that the conductor had probable cause to believe the passenger guilty of the crime. He may have believed him guilty, and yet not have had probable cause for the belief. Probable cause consists of such facts and circumstances as would have led a reasonably prudent man in like circumstances to have believed the plaintiff guilty of an intent to violate the law. Whether under the circumstances of this case as we have detailed them, probable cause existed, was, we think, a question for the jury, and should have been left to them.
Since the cause of action for false arrest was not pressed upon the trial, it is unnecessary to consider whether the defendant might not be held liable for arresting the plaintiff without a warrant, if the plaintiff was in fact innocent, whether there was probable cause or not, since otherwise a misdemeanor would not have been committed in the defendant's presence. (Carroll v.U.S., 267 U.S. 132; Johnston v. Bruckheimer, 133 App. Div. 649,652.) We leave that question open.
Therefore, the judgment of the Appellate Division in dismissing the complaint was error, but as the reversal was also upon the facts, a new trial must be ordered.
The judgment should be modified so as to grant a new trial and as so modified affirmed, with costs to abide the event.
HISCOCK, Ch. J., CARDOZO, POUND and LEHMAN, JJ., concur; McLAUGHLIN and ANDREWS, JJ., dissent.
Judgment accordingly. *Page 144