53 N.J. Super. 379 (1958)
147 A.2d 550
ANTHONY GALAFARO, PLAINTIFF-RESPONDENT,
v.
FREDERICK KUENSTLER, JR. AND LOUISE KUENSTLER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1958.
Decided December 26, 1958.
*381 Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. Leon A. Consales argued the cause for defendants-appellants (Messrs. Gelman & Gelman, attorneys; Mr. Leon A. Consales, of counsel).
Mr. Howard Stern argued the cause for plaintiff-respondent (Mr. Lawrence Diamond, attorney; Mr. Howard Stern, of counsel and on the brief).
The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from a district court judgment entered by a judge sitting without a jury.
Immediately after oral argument we pointed out that the record was deficient in that there was no compliance with R.R. 7:16-3 and we were therefore without authentic and specific expressions of the trial court's essentially relevant findings of fact and conclusions of law. Pursuant to our direction, and by December 2, 1958, R.R. 7:16-3 was complied with and counsel for both sides filed supplemental memoranda of law. The basic arguments therein are a reiteration of the arguments stated orally and in the original briefs. We therefore required no additional oral argument.
The judgment here involved arises out of a malicious prosecution complaint resulting from an allegedly unjustifiable criminal charge of atrocious assault and battery made against plaintiff by defendant, Louise Kuenstler. Defendant *382 Frederick Kuenstler, Jr., is the son of Louise Kuenstler. Plaintiff instituted this action in the Superior Court, Law Division. Subsequently it was transferred to the district court.
Appellants claim that the trial court committed reversible error in certain rulings during trial, in its factual determinations, and in its application of certain principles of law. Defendants contend that plaintiff was barred from recovery because of collateral estoppel based on the civil action for assault and battery, probable cause, and advice of counsel. Appellants seek to set aside the judgment and request the entry of a judgment of dismissal in their favor.
Defendants sued plaintiff in another civil action in the Superior Court, Law Division, demanding compensatory and punitive damages for assault and battery. That action and the present action were pending at the same time. An application to consolidate was denied. Defendants assert that the civil action for assault and battery against plaintiff was tried first and resulted in a judgment for the infant defendant of $1,000 and for the plaintiff-mother of $400; but against them on the issue of punitive damages.
In State v. Taylor, 38 N.J. Super. 6, 21 (App. Div. 1955), the court stated:
"On a review of any cause, whether criminal or civil, involving issues of fact not determined by the verdict of a jury, this court has the power to make new or amended findings of fact, but it must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. R.R. 1:5-4(b); 2:5. The permissive power so conferred is sparingly exercised."
It was pointed out in Trusky v. Ford Motor Co., 19 N.J. Super. 100, 103-104 (App. Div. 1952), that this power is exercised "only where from an examination of the record it is manifest that the findings of fact under review are so plainly unjustified by the evidence that the interests of justice necessitate their nullification."
Here, the district court rendered judgment for plaintiff and against defendants for $850. In its findings it stated:
*383 "On February 7, 1956, the plaintiff was constructing a dwelling house on Ward Avenue, in the City of Clifton. On that date Frederick Kuenstler, Jr., aged 13, admitted that he broke into the partially completed building, through a window and stole several paint brushes.
On February 8th, 1956, the plaintiff worked on the house with subcontractors until about 4:30 in the forenoon. On leaving the premises plaintiff piled up a bunch of cinder blocks where the window had been broken the day before. He returned home, cleaned up, changed his clothes and proceeded to go to Bayonne on business, in his truck. On his way he traveled past the Ward Avenue house. It was dark and as he approached the house in his truck he directed a spot light toward the house to see if everything was all right and noticed that the cinder blocks which he had piled up in front of the broken window had been knocked over.
He stopped his truck and proceeded to walk toward the house. He saw a form through the window walking around in the house and ran to the rear of the house to intercept the intruder. As he reached the rear corner of the house he collided with a person, who was taller than he, whose hands were up-raised and whom plaintiff struck once with his fist. The person fell down and from the voice the plaintiff realized it was a boy whom he had hit, who later was identified as Frederick Kuenstler, Jr.
The plaintiff took the boy to the home of a neighbor and called the Clifton Police. Officers Swede and Linzenbold arrived. The boy, Frederick Kuenstler, Jr., admitted to them and the plaintiff that he had broken into the house and had stolen several articles the day before, and had some of the material which he had stolen, at his home. He also admitted that he was on the premises on February 8th to steal whatever he could of value.
The plaintiff at that time told police he did not care to have the boy arrested, but was interested in recovering the material that had been stolen, and the two officers, the plaintiff and the boy, then went to the boy's home to procure the material which he said he had deposited there.
When they arrived at the home they were greeted by the boy's mother, the defendant Louise Kuenstler. The officers informed Mrs. Kuenstler that the boy had entered the Ward Avenue dwelling on February 7th and had stolen some brushes, and that he returned to the premises on February 8, to steal anything he could of value. The boy, in the presence of his mother, admitted the theft of the day before, and admitted being in the house that night, February 8th, for the purpose of stealing anything of value.
The boy then went into the cellar with one of the officers and returned with one of the paint brushes which he had stolen from the house the day before. Mrs. Kuenstler threatened to sue the plaintiff and insisted that the officers arrest him, which the officers refused to do. She then called her lawyer, Mr. Koribanicz who, after talking to the defendant and one of the police officers, advised Mrs. Kuenstler that he would not take any action in her behalf. *384 The officers offered to take the boy to a doctor but Mrs. Kuenstler refused and said she would take care of that herself.
On February 11, 1956, Louise Kuenstler and Frederick Kuenstler, Jr., consulted Jerome Gelman, an attorney. Mrs. Kuenstler told him that her son was walking around the Ward Avenue grounds on February 8th and had not gone near the house when the plaintiff rushed up and punched him in the face. Neither Mrs. Kuenstler, nor her son, revealed to Mr. Gelman that Officer Swede had told her that the boy admitted to him that he had gone back to the property on February 8th for the purpose of taking something else. She did not reveal to the lawyer that Officer Lizenbold had told her that the boy admitted to him that he went back to the house on February 8th, with the intention of stealing anything of value and that when he ran around the corner of the house, he collided with the plaintiff and plaintiff struck him.
The attorney, Mr. Gelman testified that Mrs. Kuenstler did not reveal to him the fact that the officers had told her that the boy admitted to them that he was in the house on February 8th for the purpose of stealing. Mr. Gelman, on the facts he received, advised her that she might sue plaintiff civilly and also make a criminal charge against him of atrocious assault and battery.
On February 16th, 1956, Mrs. Kuenstler filed a criminal complaint charging the plaintiff with the crime of atrocious assault and battery on February 8th 1956. Mr. Galafaro was arrested on this complaint and held in $500.00 cash bail for which he was permitted to substitute a $1,000 property bond at the preliminary hearing. Mr. Galafaro retained an attorney to defend him to whom he paid a fee of $500.00.
On October 19th, 1956, the criminal charge was considered by the Grand Jury which voted No bill. The complaint was again presented to the Grand Jury on November 9, 1956 but the Grand Jury refused to reconsider its determination."
Defendants urge the application of the doctrine of collateral estoppel. But the prior action, in which defendants allege they recovered a judgment against plaintiff, was not pleaded nor were the record and the testimony therein proved in this action. Collateral estoppel was therefore not tried as an issue in this action. Consequently, it may not be raised on this appeal.
We next consider the issue of "probable cause." Probable cause has been defined as a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the party is guilty of the offense. McAfee v. Los Angeles Gas & Electric Corp., 215 Cal. 219, 9 P.2d 212, 214 (Sup. Ct. 1932). It must *385 be more than mere conjecture or unfounded suspicion. Hyman v. New York Central R. Co., 240 N.Y. 137, 147 N.E. 613, 39 A.L.R. 858 (Ct. App. 1925). However, the holding over by a magistrate is strong evidence of probable cause, though not in itself dispositive of the question. It is said in Prosser on Torts (2nd ed. 1955), Malicious Prosecution, p. 657, § 98:
"* * * where the accused is committed or held to bail by a magistrate, or indicted by the grand jury, it is evidence that there was probable cause for the prosecution. It is very often said that this establishes a `prima facie' case; but since the plaintiff has the burden of proving lack of probable cause in any case, and is free to do so, this apparently means nothing more than that the commitment is important evidence on the issue."
And the Restatement of Torts, § 663 lays down the rule in these words:

"Effect of Discharge or Commitment by a Magistrate.

* * * * * * * *
(2) The magistrate's commitment of the accused is evidence that the person initiating the proceedings had probable cause."
The rule as stated in the Restatement and in Prosser is that generally prevailing in this country. Commitment by a magistrate is no less than evidence of probable cause and no more than prima facie evidence of it. 34 Am. Jur., Malicious Prosecution, § 64, p. 744; 54 C.J.S. Malicious Prosecution § 34(b), p. 995.
In our State the failure of the grand jury to indict is not considered conclusive on the question of probable cause but proof of termination of the criminal proceedings in favor of the accused is admissible. The rationale of this rule is that the accuser has no control over the termination of the action by the magistrate or the grand jury and so he should not be foreclosed by it. This rule was clearly set out in Shoemaker v. Shoemaker, 11 N.J. Super. 471, 478 (App. Div. 1951), wherein the court said:
"The principle of public policy to encourage criminal prosecutions at the instance of private citizens is better served, we think, in a case such as that before us, by a rule requiring plaintiff to adduce *386 affirmative proof, in addition to the proof of termination of the proceeding in his favor, tending to show the falsity of or the want of probable cause for the charge laid against him, or that defendant did not honestly believe in his guilt. This is the law in New Jersey. An inference that defendant lacked reasonable and probable cause for the proceeding does not arise by proof that the termination resulted from the refusal of a grand jury to indict the plaintiff, [citations]; or from the voluntary abandonment of the proceeding by the defendant, [citation] or from plaintiff's exoneration of the charge, [citation]."
And in Earl v. Winne, 14 N.J. 119, 134-135 (1953):
"The essence of an action for malicious prosecution is that the proceeding was instituted without probable cause, that the complaint was actuated by a malicious motive in making the charge. [citations]. Malice may be inferred, however, from a lack of probable cause. [citation]. Further, the criminal proceeding must be terminated in his favor and the rule is that the plaintiff must adduce affirmative proof, in addition to the proof of the termination of the proceeding in his favor, tending to show the falsity of or want of probable cause for the charge laid against him, or that the defendant did not honestly believe in his guilt. Shoemaker v. Shoemaker, supra, 11 N.J. Super. at page 478."
Although the grand jury's action is not conclusive, it is evidence of a favorable termination of the criminal proceedings and is to be considered along with the other evidence in the case. Our examination of the record convinces us that the trial judge permitted the grand jury records to be admitted for the limited purpose of establishing this narrow point, i.e., that the criminal proceedings stemming from defendant mother's criminal complaint of February 16, 1958 against plaintiff terminated in his favor. As so limited, the admission was proper.
In this case the "affirmative proof" requirement was supplied by plaintiff, two police officers and the defendants themselves. Finally, we feel that plaintiff has established malice from the inference arising out of proof of lack of probable cause. Earl v. Winne, supra (14 N.J. at page 134); Hammill v. Mack International Motor Truck Corp., 104 N.J.L. 551, 553 (E. & A. 1928).
The defense of advice of counsel is not available to defendants. In Dombroski v. Metropolitan Life Ins. Co., *387 126 N.J.L. 545, 547 (E. & A. 1941), the court assumed both the existence of the advice of counsel defense and the necessity for a full and complete divulgence of the facts to counsel as a prerequisite to a successful assertion of this defense. Similarly, in Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 172 (Ch. Div. 1951), affirmed on opinion, 9 N.J. 605 (1952), it was said:
"A final contention is made that the affidavits of Mayflower demonstrate the bringing of the action on the advice of counsel. Such advice is a defense only where all the facts are submitted fully and truthfully to counsel."
Accord: Cabakov v. Thatcher, 37 N.J. Super. 249, 257 (App. Div. 1955). See also 34 Am. Jur., Malicious Prosecution, § 78, p. 752, on the necessity for full and fair statement of the facts.
Defendants claim that defendant mother did not inform her attorney that the patrolmen told her that the boy was inside plaintiff's house because they did not so inform her or, if they did, she did not believe such was the case. But her opinion is not the determining factor. Plaintiff and the two policemen testified that they told defendant-mother that her son admitted stealing from plaintiff's building the day before and that he was on plaintiff's property the night he was caught for the purpose of stealing. The mother told her attorney that on February 8 her son was not in plaintiff's house and that he had not stolen anything the night he was caught. Moreover, the trial court asked the attorney who gave the advice:
"Did she ever tell you that two police officers had stated to her that the boy was in his house on February 8th and that the boy had so admitted to them?"
The attorney stated:
"She did not * * *."
These statements by the officers were important and material. They should have been related to her attorney when seeking *388 his advice. The failure to disclose such information prevented any justifiable reliance on the advice given. Prosser on Torts, supra, § 98.
We hold that the defense of advice of counsel cannot protect the defendant-mother because she did not fully and truthfully state to her attorney all the material facts within her knowledge.
Although we have the power to make new findings, we must give due deference to R.R. 1:5-4(b), supra, and "When a finding [of the trial court] * * * is amply supported by the evidence, it will not be disturbed on appeal." Spagnuolo v. Bonnet, 16 N.J. 546, 555 (1954). Here, the findings are amply supported. We sustain the trial court's judgment against the defendant-mother.
At the oral argument respondent's attorney was asked for any suggested foundation in the record for the judgment against the infant defendant. He stated he could find none but said that he had made no point of it since appellants did not raise this issue. We find no basis for the judgment entered against the infant.
The judgment against the defendant-mother is affirmed with costs. The judgment against the infant defendant is set aside without costs.