160 N.J. Super. 354 (1978)
389 A.2d 1012
JAMES A. WILLIAMS, JR., PLAINTIFF-RESPONDENT,
v.
SOLON PAGE AND WILLIE JEAN PAGE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 6, 1978.
Decided June 26, 1978.
*357 Before Judges LYNCH, BISCHOFF and KOLE.
*358 Mr. William L. Brach argued the cause for appellant (Messrs. Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, attorneys; Mr. Raymond I. Korona on the brief).
Mr. Dennis Cipriano argued the cause for respondent (Mr. James I. Peck, IV on the brief).
The opinion of the court was delivered by KOLE, J.A.D.
The complaint in this action by plaintiff Williams alleged that defendants Solon Page (Solon) and Willie Jean Page (Willie Jean), had conspired to defame and prosecute him and had maliciously prosecuted him; that Solon deliberately perjured himself with resulting damage to Williams, that defendants' actions violated Williams' civil rights, that defendants slandered Williams and that Solon committed an assault and battery against Williams and threatened his life. Solon filed an answer. No answer was filed by Willie Jean. Almost two years before the trial Williams' attorney entered a default against Willie Jean.
When the trial began both defendants appeared. Solon was then represented by counsel; Willie Jean was not. The judge informed Willie Jean that she was in default. She stated that her attorney had lost her file and had told her that it was "too late." The judge agreed that it was "too late" and advised her that she would have to "settle at some later time."[1]
At the end of the jury trial in this matter the only issues to be determined were the following:
1. Were defendants Solon and Willie Jean liable for malicious prosecution of plaintiff Williams in connection with an indictment returned against Williams charging him with a verbal threat to kill Solon and an assault with a pistol *359 with intent to kill Solon (hereafter "the Halloween night incident")?
2. Was Solon liable to Williams for malicious prosecution by his having filed a complaint charging Williams with an assault by waving a gun at Solon (hereafter "the second malicious prosecution incident")? This charge apparently led to a search of Williams in the corridor of the courthouse during the course of divorce proceedings between Williams and Willie Jean, his then wife.
3. Was Solon liable to Williams for an assault and battery which occurred during the Halloween night incident?
4. What amount of compensatory or punitive damages should be awarded Williams against Solon or Willie Jean by reason of any such liability?
Despite the default entered against Willie Jean and the fact that she was not represented at trial by counsel, the judge submitted to the jury the question of whether both defendants were liable for maliciously prosecuting Williams. He also instructed the jury to decide whether defendant Solon alone was liable for committing an assault and battery against Williams and for the second malicious prosecution incident. The jury was further charged as to the principles relating to an award of compensatory and punitive damages in the event liability were found.
The jury returned a verdict of $20,000 in compensatory damages against both defendants for malicious prosecution and $10,000 in compensatory damages against Solon for the assault and battery. It did not indicate whether its verdict on the malicious prosecution claim was predicated on the Halloween night incident or on both that and the second malicious prosecution incident for which only Solon could possibly be held liable. The jury also awarded $5,000 in punitive damages against Solon and Willie Jean for both the malicious prosecution and assault and battery claims, but did not specify how much of that amount was attributable to each claim or what portion thereof each defendant was required to pay.
*360 Solon alone moved for a new trial on the ground that the verdict was excessive and against the weight of the evidence. The judge, after argument, denied the motion for a new trial predicated on the weight of the evidence contention, but entered an order directing that the verdict on the malicious prosecution claim be reduced to $10,000 and that on the assault and battery claim be reduced to $5,000. The $5,000 punitive damage award was not disturbed. Williams filed a written consent to such reduction.
Both defendants appealed. Williams cross-appealed from the order granting the remittitur with respect to damages.
On this appeal defendants contend that (1) the judgment against Willie Jean should be set aside because there was no evidence to show that she had maliciously prosecuted Williams, and (2) the verdict on the malicious prosecution claim entered against Solon was without basis in the evidence because plaintiff failed to prove the requisite malice and absence of probable cause.
Although he did not allege separate occurrences in his complaint (R. 1:4-2), at trial Williams proved two distinct instances of alleged malicious prosecution.
The first arose on Halloween night, 1973. Williams had struggled with defendant Solon after he had arrived, uninvited, at or after midnight, at the home of his estranged wife, defendant Willie Jean. Under Williams' version of the facts, Williams had taken a gun from Solon and shot it. Solon claimed that Williams brought the gun into the house with him. Solon instituted proceedings against Williams for assault with intent to kill Solon and threatening by speech to take his life. As a result an indictment was returned against Williams.
As to the second alleged malicious prosecution, Solon filed a complaint charging that Williams had waved a gun at him while driving by him in his car. Williams denied that this event ever occurred. The jury could reasonably have found on the proofs that this complaint was dismissed when *361 Solon failed to appear in court, despite Solon's claim that he never received notice to appear.

I

Malicious Prosecution Predicated on the Indictment
Malicious prosecution is not a favored cause of action and seeks to grant relief against "one who recklessly institutes criminal proceedings without any reasonable basis * * *." Lind v. Schmid, 67 N.J. 255, 262 (1975). If plaintiff fails to prove any one of the following elements, his malicious prosecution action must fail: (1) that the criminal action was instituted by defendant against plaintiff; (2) that it was actuated by malice; (3) that there was an absence of probable cause for the proceeding, and (4) that it terminated favorably to plaintiff. Each element is separate from the others, although evidence of one may be relevant with respect to another. Lind v. Schmid, supra. Even though the essence of the cause of action is lack of probable cause, Lind v. Schmid, supra, of equal importance is whether the criminal action terminated favorably or "not adverse" to plaintiff, (Mayflower Industries v. Thor. Corp., 15 N.J. Super. 139, 161-162 (Ch. Div. 1951), aff'd 9 N.J. 605 (1952)), as a matter of fact or law.
In the event the facts are undisputed, the existence of probable cause or favorable termination of proceedings is a question of law for the court. If factual disputes are to be resolved by the jury, the findings must be made on adequate instructions by the court. See Lind v. Schmid, supra, 67 N.J. at 266.
Where, as here, there has been a judicial determination with respect to the criminal proceedings, the judge before whom the malicious prosecution action is tried must analyze what occurred before the criminal court "and the effect thereof are questions for the judge." As to the matter of probable cause, he must resolve whether that court's determination was based on evidence from which a reasonable *362 inference of probable cause might be drawn. "If not, it is to be disregarded. If it was, then the malicious prosecution suit should be dismissed." In the usual case to re-try the issue of probable cause is unnecessary. Lind v. Schmid, supra at 265-266.
Similar principles apply to the matter of favorable termination of the criminal proceedings.[2] The judge must decide, after considering what occurred before the criminal court, whether the nature of such termination was such as to justify the conclusion that it was one favorable to plaintiff. If he determines that it was not favorable, the malicious prosecution action should be dismissed; if it was favorable, that action should continue.
In either instance  probable cause or favorable termination  if the record of the criminal proceedings presented is inadequate for an appropriate determination, further proofs relating thereto, by way of a transcript of such proceedings or otherwise, must be presented to the judge.
We recognize that defendants have not specifically contended on this appeal that the criminal proceedings were terminated in their favor and have limited their contentions to lack of probable cause and malice. Nevertheless, in this type of action, particularly under the fact pattern in this case, the interests of justice require that the issue of favorable termination of the indictment proceedings be considered.
The indictment against Williams was dismissed by a court upon motion of his attorney. The assistant prosecutor consented as to "the form" of the order dismissing the indictment. The authority under which this occurred is not clear from the record. Colorably, the dismissal may have been pursuant to N.J.S.A. 2A:163-2 (cf. State v. Krol, 68 N.J. 236, 243, n. 1), or it may have resulted from a plea bargain or a compromise. It is impossible to determine *363 the precise nature of the reasons for the dismissal without a disclosure of the full proceedings before the criminal court judge. The stipulation of counsel below that the order of dismissal and the psychiatric reports reviewed by the criminal court be admitted in evidence "to be presented to the jury" is not an adequate substitute, particularly since plaintiff's counsel, who represented him at the criminal proceeding, stated that the dismissal was "based upon insanity."
The order of dismissal recites that Williams' attorney presented the motion to dismiss to the court on September 13, 1974. The order was not entered until December 20, 1974. It recites that the court reviewed reports of two psychiatrists. We note that one of the psychiatrists had been designated by the State and the other by Williams; that both reports concluded that Williams was insane at the time of the crimes with which he was charged in the indictment; that Williams' phychiatrist found that he was fully recovered, and that the psychiatrist designated by the State gave a diagnosis of "schizophrenia-paranoid type  mild in remission" and stated that although his condition had improved, out-patient treatment was indicated. The order dismissing the indictment provided that Williams "shall obtain and submit to psychiatric treatment which is or may be required." It does not appear that Solon had notice of or any opportunity to participate in the dismissal proceedings, even though he testified before the grand jury that returned the indictment.[3]
On the face of the documents presented with respect to the dismissal of the indictment, it would appear that, as a matter of law, such criminal proceeding was not *364 terminated favorably to plaintiff or not adverse to him. If there had been an acquittal by reason of insanity, that would not constitute a favorable termination. Such an acquittal "implies" a determination that the person charged has committed the criminal act against the victim but that he did so without a criminal state of mind. State v. Krol, supra, 68 N.J. at 246. Even though there is, in effect, no crime to punish, the person committing the criminal act must be so dealt with as to protect society against him if, notwithstanding no culpable fault of his own, he poses a threat to public safety. State v. Krol, supra. Thus, where insanity is a defense to a crime, the trial judge is now required to instruct the jury as to the consequences of not guilty by reason of insanity so that it does not act under the mistaken impression that a defendant will necessarily be freed or be indefinitely committed to a mental institution. State v. Krol, supra, at 265. See also Bolton v. Harris, 130 U.S. App. D.C. 1, 395 F.2d, 642, 651 (D.C. Cir.1968). The finding of insanity at the time of commission of an otherwise criminal act has been appropriately designated as a "chilling determination that the defendant is an insane" person not legally responsible for his acts. Commonwealth v. Mutina, 366 Mass. 810, 323 N.E.2d, 294, 301 (Sup. Jud. Ct. 1975). Similar considerations may have prompted the criminal court judge to provide in the order of dismissal that Williams obtain phychiatric treatment "which is or may be required."
We perceive no reason for treating this dismissal of the indictment, on the present record, any differently from an acquittal by reason of insanity. To hold otherwise would require that the victim of the acts described in the indictment make a decision as to whether his assailant was insane before he instituted the criminal proceeding. To impose such a requirement is patently unrealistic and unjust.
Additionally, a complete record of the dismissal proceedings may disclose that the order of dismissal resulted from *365 a compromise or plea bargain between the State and Williams.
Whether the dismissal was predicated on insanity at the time the offenses were committed or a plea bargain, agreement or compromise, on its face it was not of such a nature as to indicate Williams' innocence of the acts allegedly committed against Solon. If the dismissal is for any reason compatible with Williams' guilt, as far as the victim is concerned. it does not constitute a favorable termination. See 3 Restatement, Torts 2d, §§ 658-660 (1976); Prosser on Torts (4 ed.), § 119 at 839-840; 1 Harper & James, The Law of Torts, § 4.4 at 307-311 (1956); Jackson v. Beckham, 217 Cal. App.2d 264, 31 Cal. Rptr. 739 (D. Ct. App. 1963). See also, Green v. Warnock, 144 Kan. 170, 58 P.2d 1059 (Sup. Ct. 1936); Halberstadt v. New York Life Ins. Co., 194 N.Y. 1, 86 N.E. 801 (Ct. App. 1909).
Further, even if the dismissal of the indictment could be construed as presenting a factual issue for the jury on whether that proceeding was terminated favorably to Williams, the jury was left without appropriate guidance by the judge in his instructions to determine that question. The jury was informed that it should decide whether in fact the criminal proceeding was terminated favorably to Williams or, instead, was "terminated in his favor by reasons of medical circumstances." At a minimum, on this record, it should have been charged as to the effect of a dismissal by reason of insanity. It was permitted simply to speculate on this significant question in arriving at a determination without an awareness of the applicable law.
For reasons similar to those expressed with respect to the issue of the favorable termination of the indictment, a complete disclosure of the dismissal proceeding is required in order to determine whether, as a matter of law or fact, probable cause existed for Solon's institution of the proceedings resulting in the indictment. Here, too, on its face, a dismissal predicated on insanity might, as a matter of law, support a dismissal of the malicious prosecution action *366 because probable cause for the criminal proceedings had been proven. If the acts alleged in the indictment had in fact occurred but were legally excused by reason of insanity, Solon could not reasonably be said to have been aware of such insanity when they took place, when he filed the charges or when he testified before the grand jury. And even if a jury question on probable cause was presented, the jury was not adequately charged as to the effect of the dismissal on that issue. The judge correctly charged that lack of probable cause could not be inferred "just because the criminal prosecution ended as it did here * * * for medical reasons." He should have gone further and explained to the jury the legal effect of a dismissal by reason of insanity  i.e., that, for malicious prosecution purposes, such a dismissal would be prima facie, if not necessarily conclusive, evidence of probable cause. See Lind v. Schmid, supra 67 N.J. at 264-266; Galafero v. Kuenstler, 53 N.J. Super. 379, 384-385 (App. Div. 1958); Shoemaker v. Shoemaker, 11 N.J. Super. 471, 474-479 (App. Div. 1951).
We have concluded that the evidence at the trial, when considered with the stated reasons for dismissal of the indictment, was such that the jury must have found lack of probable cause on impermissible factors extraneous to the proofs in the record or reasonable inferences therefrom. We are thus satisfied that the trial judge should have granted the motion for a new trial on this malicious prosecution matter on the ground that the verdict was against the weight of the evidence. It clearly and convincingly appears that the jury's verdict against defendants on this claim constitutes a manifest denial of justice under the law. R. 4:49-1(a); 2:10-1; State v. Sims, 65 N.J. 359, 373-374 (1974); Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969).
Thus, Williams' testimony showed that on Halloween night he went to the third floor of Willie Jean's house without asking anyone's consent. He opened a closed door to a dark room and there found Solon. Solon told him to get out and brandished a gun. Except in the report of his psychiatrist, *367 Williams never claimed that Solon shot at him. Instead, Williams immediately lunged at Solon, grabbed at him and began to scuffle. He took Solon's gun away and shot it. The psychiatric reports to which we have referred showed medical opinions that Williams suffered a "sudden loss of reality" during which he did not know what he was doing and was legally insane. He told the State's psychiatrist that he had "manhandled" Solon.
The dismissal of the indictment on the ground of temporary insanity, together with Williams' testimony at trial and the facts of the Halloween night incident he related to the psychiatrists, do not reasonably support a finding that Solon was not warranted in believing, as a prudent or cautious man, that Williams had assaulted him with intent to kill and threatened to take his life. An ordinary cautious man might well have believed that Williams was guilty of the offenses charged in the indictment. The proofs do not sustain a finding that the criminal acts charged in the indictment were not committed by Williams. At best, Williams' claim is that although he committed the acts charged, he was insane at the time and could not be found guilty of the necessary criminal intent to justify conviction of a crime. It is plainly unreasonable for a jury to have found, under these circumstances, that at the time he instituted the proceedings that led to the indictment Solon knew that Williams was insane when the alleged criminal acts were committed.
Moreover, there was an insufficient showing of malice on Solon's part when he filed the complaint. It is true that Williams and Willie Jean were separated and Solon was apparently her boy friend at the time of the Halloween night incident. It can be inferred that the two men did not like each other. Williams had accused Solon of adultery with Willie Jean. But at the time Solon went for the police, Williams had shot the gun at him, and Solon knew that Williams was still in the house in possession of the gun, that Willie Jean was still there with her children and an older woman, and that Williams appeared to be very upset. Under those *368 circumstances it cannot be said that Solon intentionally had Williams arrested without just cause or excuse.
In view of the foregoing, it is evident that the jury verdict finding Solon and Willie Jean liable for malicious prosecution with respect to the indictment cannot stand.
Defendants did not move for a judgment in their favor either at the close of the Williams' evidence, at the close of all of the proofs, or after trial. Additionally, Williams may be able to supply the deficiencies in the evidence by presenting the transcript or other proofs relating to the indictment dismissal proceedings. Moreover, defendants failed to raise the issue of favorable termination of the indictment on this appeal. Under these circumstances we believe that the proper course in this case is to reverse the judgment to the extent that it is based on malicious prosecution by Solon by reason of the indictment and to remand for a new trial on that issue. See Wenner v. McEldowney & Co., 102 N.J. Super. 13, 22 (App. Div.) certif. den. 52 N.J. 493 (1968); R. 2:10-5, 2:10-2.
We limit this reversal and remand with respect to the indictment to Solon's liability, since we have concluded that there is a total lack of evidence to justify a verdict of liability against Willie Jean with respect thereto, and that judgment should be entered in Willie Jean's favor on this claim.[4] We have so determined, giving Williams the benefit of all of the proofs in his favor and the reasonable inferences thereon. Dolson v. Anastasia and Wenner v. McEldowney & Co., both supra. As to Willie Jean, justice would not be served by a new trial. There was no evidence, or reasonable inferences therefrom, from which fairminded persons could have concluded *369 that she instituted, participated in or encouraged the indictment proceedings. Prosser, op. cit. at 836-837.
We do not consider the default entered against Willie Jean to be conclusive on the issue of her liability for this malicious prosecution claim. The trial judge had discretion to require (as he did) Williams to prove her liability, as well as damages, despite the default against her. R. 4:43-2 (b); Beech Forest Hills, Inc. v. Morris Plains, 127 N.J. Super. 574, 581-582 (App. Div. 1974); Johnson v. Johnson, 92 N.J. Super. 457, 464-465 (App. Div. 1966).
It is not significant, under the circumstances of this case, that Willie Jean, who was not represented by counsel at trial, did not make a motion for a new trial predicated on the ground that the verdict was against the weight of the evidence, or a motion for a judgment in her favor. It is true that at the beginning of the trial the judge indicated that it was too late to do anything about the default entered against her two years earlier and that she had never moved to vacate the default. Nevertheless, the judge properly did not limit the jury's consideration to the amount of damages to be awarded against Willie Jean for malicious prosecution. He instructed the jury to determine her liability, along with that of Solon, with respect to the malicious prosecution claim involving the indictment.
It may well be that the jury found Willie Jean's testimony not to be credible. Thus, for example, she testified that she did not show the police the two guns when they came to her home the second time, whereas the police report and Williams indicated the contrary. Nevertheless, there was no evidence that would support a reasonable inference that she in any way instituted, participated in or encouraged the proceedings leading to the indictment. The jury's finding against her on that question was predicated on pure conjecture, rather than on the proofs.
It was undisputed that the complaint arising from the incident in Willie Jean's home was signed by Solon. It was Solon, not Willie Jean, who testified before the grand jury. *370 There was no evidence whatever that the complaint was instituted by Willie Jean. Williams' own testimony shows that when the police came to the house the first time, Willie Jean sent them away, saying that there was "no trouble" and "everything is okay." It was only when Solon escaped from the house and brought the police back with him that Williams was arrested; and the indictment proceedings commenced thereafter.
For the foregoing reasons, the judgment against Willie Jean must be reversed in all respects.

II

Malicious Prosecution Predicated on the Incident Involving the Alleged Waving of the Gun
This claim, as the court properly instructed the jury, was only against Solon. From our review of the record we have concluded that the evidence may be sufficient to support a verdict against Solon for this second malicious prosecution incident. The jury could reasonably have believed that Williams did not wave a gun at Solon in the street, that Solon's subsequent prosecution on such a charge was without probable cause and that the termination thereof was the result of Solon's failure to appear at the proceedings thereon, although having been duly given notice thereof.
However, at no time during the trial below were the two alleged malicious prosecution claims clearly distinguished for purposes of formulating a verdict. They were not separately alleged in the complaint, the judge did not clearly tell the jury that it had to make a separate determination as to each incident, and the jury did not indicate which event or events it found to be the basis for its verdict. Additionally, the damages for malicious prosecution were awarded against both Solon and Willie Jean, even though the latter had no connection with the incident involving the alleged waving of the gun.
*371 With respect to our determination as to this second malicious prosecution incident, see III, below.

III

The Assault and Battery Claim Against Solon
The alleged assault and battery on Williams is an integral part of the Halloween night incident. We have no way of determining whether the jury might have arrived at a different verdict with respect to that claim had there been a full disclosure of the proceedings involving the dismissal of the indictment resulting from the Halloween night incident. Moreover, the jury award of $5,000 punitive damages related to both the malicious prosecution and assault and battery claims. Under the court's charge Willie Jean in no event could have been responsible for punitive damages either with respect to the second malicious prosecution incident or the assault and battery; and by virtue of our determination herein, she may not be held liable for any damages, compensatory or punitive, relating to any of these claims.
The notice of appeal was from the entire judgment. Nevertheless, from defendants' argument on the appeal it is unclear as to what, if any, error Solon claims in connection with the assault and battery verdict or judgment.
In any event, in view of the confusing nature of the punitive damage award, the lack of clarity with respect to the verdict as to the second malicious prosecution incident (set forth under II, above) and our disposition of this appeal, we have concluded that fundamental fairness requires that the judgment against Solon be reversed and a new trial be granted to Solon as to liability and damages with respect to both the second malicious incident and the assault and battery claims.

* * *
Prior to the new trial a pretrial order should be entered setting forth the specific claims of Williams and defenses *372 of Solon. Appropriate pretrial discovery should be granted by the trial judge at the request of either of the parties. At the trial the judge should use the special verdict or interrogatory procedures under R. 4:39-1 and 4:39-2 so that clear jury verdicts may be returned as to each claim and the damages, if any, with respect thereto.

IV

Conclusion
The judgment entered against Willie Jean is reversed and a judgment in her favor should be entered by the court below. As to Solon, the judgment against him is reversed and the matter is remanded for a new trial on both malicious prosecution claims and the claim for assault and battery.
In view of our disposition of this appeal, we need not decide the question raised by the cross-appeal relating to the remittitur ordered by the trial judge.
We do not retain jurisdiction. No costs to any party on this appeal.
NOTES
[1] However, Willie Jean testified at the trial. She was called as a witness by Solon.
[2] We use the term "favorable termination" of the criminal proceedings as including a termination not adverse to plaintiff.
[3] There was also some evidence from Solon that Mrs. Robinson, Willie Jean's godmother, also testified before the grand jury. According to both defendants, she was present at or near the scene of the Halloween night incident. However, Williams denies that she was then present.
[4] See and compare Ferrie v. D'Arc, 31 N.J. 92 (1959); Wenner v. McEldowney & Co., supra, 102 N.J. Super. at 20-23; Logan v. No. Brunswick Tp., 129 N.J. Super. 105 (App. Div.) certif. den. 66 N.J. 328 (1974). See also, Menza v. Diamond Jim's Inc., 145 N.J. Super. 40 (App. Div. 1976). We may, in the exercise of our original jurisdiction, or by noting plain error, enter a judgment for Willie Jean predicated on the record before us. R. 2:10-5; 2:10-2.