279 N.J. Super. 386 (1995)
652 A.2d 1245
CHARLES W. GEYER, SR., PLAINTIFF-APPELLANT,
v.
ALFRED L. FAIELLA AND BROWN & BROWN, P.C., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1995.
Decided February 3, 1995.
*388 Before Judges PRESSLER, LANDAU and CONLEY.
Robert K. Erlanger argued the cause for appellant.
John T. Dolan and Kevin J. McKenna argued the cause for respondent Alfred L. Faiella (Crummy, DelDeo, Dolan, Griffinger & Vecchione, attorneys; Mr. Dolan and Mr. McKenna, on the brief).
William W. Voorhees, Jr., argued the cause for respondent Brown & Brown (Voorhees and Acciavatti, attorneys; Ana Linda Day and Mr. Voorhees, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Charles W. Geyer, Sr. instituted an action in the Law Division, Morris County, against defendant Alfred L. Faiella, who is executive director of the Newark Economic Development Corporation (NEDC), and defendant Brown & Brown, P.C. (Brown firm), Faiella's attorneys. Raymond A. Brown, Esq. (Brown) is a member of the Brown firm.
The complaint asserts Faiella concocted a false story that Geyer had threatened his life; related it to Brown orally and in writing; and that Brown, aware of its falsity, republished the "lie" to the United States Attorney's Office.
The complaint further asserts that "Faiella and Brown's lies were deliberately made with intent to induce the U.S. Attorney's Office to prosecute Geyer"; that the Grand Jury did not return an indictment; that the criminal proceeding was terminated by the U.S. Attorney in Geyer's favor; and that Geyer suffered resulting injury, including emotional distress. Faiella's actions are attributed *389 in the complaint to an attempt to destroy Geyer's reputation and business "in retaliation for Geyer's exposing Faiella's criminal activities as NEDC's Executive Director," including "trying to shake [plaintiff] down for $100,000 per year" in exchange for securing NEDC's approval of a refinancing on property primarily owned by Geyer.
Based upon these allegations, Geyer's complaint sought recovery from Faiella and the Brown firm for malicious prosecution and defamation of a private figure.
Faiella and the Brown firm each moved to dismiss the complaint, pursuant to R. 4:6-2(e), for failure to state a claim upon which relief may be granted. The motions for dismissal were granted with prejudice. Geyer appealed. We reverse.
Reversal here is based upon the incorrect legal standards applied in dismissing the defamation and malicious prosecution counts, and upon the extraordinarily limited range of a R. 4:6-2(e) motion which, brought at the onset of litigation, is granted only in "the rarest instances", Lieberman v. Port Authority of New York and New Jersey, 132 N.J. 76, 79, 622 A.2d 1295 (1993); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 772, 563 A.2d 31 (1989), taking the facts asserted in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.[1]Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192, 536 A.2d 237 (1988). Moreover, when granted, barring other impediments such as a statute of limitations, the dismissal should be without prejudice. Printing Mart, supra.

The Defamation Count
The motion judge dismissed the defamation count as to both defendants, concluding that the statements, oral and written, were *390 absolutely privileged as "the beginning of the institution of a proceeding ... even if activated by malice." We assume that the judge's "malice" reference was to "actual malice" in the sense of "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." See New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).
A statement that accuses a person of a threat to kill asserts a serious crime which is sufficient to denigrate the reputation of the alleged actor. It is thus defamatory per se unless truth is established. See Lawrence v. Bauer Pub. & Print. Ltd., 89 N.J. 451, 459-461, 446 A.2d 469 (1982), cert. denied, 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 395 (1982). It has long been held, however, that a statement made by a judge, attorney, witness, party, or juror in the course of judicial proceedings, and having some relation thereto, is absolutely privileged. Erickson v. Marsh & McLennan Co., 117 N.J. 539, 563, 569 A.2d 793 (1990); Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552, 558, 117 A.2d 889 (1955). In DeVivo v. Ascher, 228 N.J. Super. 453, 458, 550 A.2d 163 (App.Div. 1988), certif. denied, 114 N.J. 482, 555 A.2d 607 (1989), we expressed a preference for the view that a broad interpretation be given to the phrase "in the course of a judicial proceeding."
Without question, "[I]n defamation actions, the existence vel non of privilege is basically a question of law for the court's determination." Lawrence, supra, 89 N.J. at 462, 446 A.2d 469. Thus, the propriety of dismissal of the defamation count on the pleadings in this case hinges primarily on whether the motion judge correctly applied an absolute, as distinct from qualified, privilege to the oral and written complaints made to federal prosecutorial officials. These publications constitute the principal focus of the pleadings. Plaintiff also complains of the incidental publication by Faiella to his attorney, Brown. We see no sound basis in law or policy to afford an absolute privilege for knowingly false statements communicated to one's attorney to procure his assistance, assuming such communication could be established *391 under the Rules of Evidence. Thus, there is no need to address the question of attorney-client privilege here.
Affordance of an absolute privilege is predicated on the need for unfettered expression critical to advancing the underlying governmental interest at stake in the course of judicial, quasi-judicial, or legislative proceedings. Erickson, supra, 117 N.J. at 563, 569 A.2d 793. The motion judge evidently considered that the statements complained of were made at the "beginning of the institution" of a judicial proceeding, broadly interpreted under DeVivo, supra. The Supreme Court noted in Rainier's Dairies, supra, 19 N.J. at 562, 117 A.2d 889, however, that one of the reasons for affording an absolute privilege in the course of judicial proceedings is that the potential harm which may result therefrom is mitigated by the formal requirements of notice and hearing, the comprehensive control exercised by the judge whose action is reviewable upon appeal, and the availability of retarding influences such as false swearing and perjury prosecutions.
Such mitigating factors are not present at the stage of making an initial complaint to prosecutorial or law enforcement authorities. Thus, in Dairy Stores, Inc. v. Sentinel Pub. Co., 104 N.J. 125, 137, 516 A.2d 220 (1986), the Supreme Court recognized only a qualified privilege of citizens "to make statements to authorities for the prevention and detection of crime." Cited approvingly therein were Dijkstra v. Westerink, 168 N.J. Super. 128, 134-136, 401 A.2d 1118 (App.Div.) certif. denied, 81 N.J. 329, 407 A.2d 1203 (1979) (statements by private citizens giving information to proper authorities for the prevention or detection of crime are qualifiedly privileged, but not absolutely privileged); Cashen v. Spann, 125 N.J. Super. 386, 404-406, 311 A.2d 192 (App.Div. 1973), mod. on other grounds, 66 N.J. 541, 334 A.2d 8 (1975) (qualified privilege afforded to telephone company which supplied information to prosecutor in the aid and detection of crime); and Sokolay v. Edlin, 65 N.J. Super. 112, 167 A.2d 211 (App.Div. 1961). See also Pollinger v. Loigman, 256 N.J. Super. 257, 263, 606 A.2d 1113 (1992); Citizens State Bank of N.J. v. Libertelli, 215 N.J. Super. *392 190, 198, 521 A.2d 867 (App.Div. 1987). In exercise of a qualified privilege, a statement is not privileged if the person making it has full knowledge of its untruthfulness. Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 375-376, 149 A.2d 193 (1959). "[N]o one has a license to lie." Dairy Stores, supra, 104 N.J. at 151, 516 A.2d 220. Thus, our comments in DeVivo, supra, respecting the breadth of the in-the-course-of-the-proceedings test are qualified by the plain navigational aids provided in Dairy Stores, Cashen, Rainier's Dairies, and Dijkstra. As the Supreme Court stated in Fees v. Trow, 105 N.J. 330, 337, 521 A.2d 824 (1987), "Because an absolute privilege protects even a maliciously-spoken untruth, it is provided only in the narrowest of instances, where the public interest in unfettered communication justifies the complete abrogation of the plaintiff's right of recovery...."
We note in this regard that prosecuting officials are not immunized under the law of this State for conduct constituting actual malice such as making knowingly false charges. See N.J.S.A. 59:3-14; Burke v. Deiner, 97 N.J. 465, 479 A.2d 393 (1984); Cashen, supra. In short, a prosecutor's conduct is not absolutely privileged at the charging stage. Burke, supra at 471-472, 479 A.2d 393; Cashen, supra.
Although there is some non-binding authority to the contrary, noted in DeVivo, supra, 228 N.J. Super. at 458, 550 A.2d 163, we find no compelling policy interest in affording to untruthful criminal complainants an absolute privilege while affording to the prosecutors who receive and act upon such untruthful complaints only a qualified privilege.
We conclude that each defendant's privilege in this instance was qualified, not absolute, and thus not privileged if the person making it had full knowledge of its untruthfulness. Accepting as true the allegations of the complaint regarding knowing falsity, grant of the R. 4:6-2(e) motion on the defamation count was premature and must be reversed. See Lieberman, supra; Velantzas, *393 supra.[2]

The Malicious Prosecution Count
The motion judge dismissed the counts against both defendants for reasons which are best summarized by the following excerpt from the oral opinion rendered:
On the malicious prosecution, there really is no damage here. There's no special damage because there's no arrest, no liberty wasn't in any way compromised, we don't know precisely what happened but the Grand Jury didn't return an indictment. I don't know whether it was a no bill or not because there's no way of knowing.
But in any event, there were just no consequences to this defendant so there's noway that he would be able to recover anything. There's no, nothing to recover. There's no damage done of any kind that I can see so  and just specifically to deal with the Brown situation, I, I agree that an attorney can't be chargeable in these situations with knowing based upon suspicion that what their client is telling them may be false.
As to the Brown firm, we are obliged to note again that the allegations of the complaint must be deemed true for the purposes of an R. 4:6-2(e) motion. Thus, it must be accepted, solely for purposes of the motion, that both the attorneys and Faiella had knowledge of the falsity of the allegations, and communicated them with the purpose to induce prosecution of Geyer, and that this was done in retaliation for Geyer's prior conduct respecting Faiella's activities as executive director of NEDC.
As to the judge's reference to the absence of "special damage" because of the absence of any arrest, deprivation of liberty or return of indictment, we assume that the judge was making reference to the absence of allegation of a "special grievance." Our assumption, we think, is well founded, in light of the use of the word "special" and factors such as the absence of arrest or motion. Moreover, that may be a defense only where the facts submitted to the *394 deprivation of liberty. Indeed, if absence of damage allegations alone was intended to be the basis for dismissal, it would have been improper at this stage of the proceedings, under the strict R. 4:6-2(e) standards we have discussed above, because some damages were alleged.
Considering, then, that absence of an allegation of a special grievance was the test employed, it was incorrect as a matter of law. There is no need to allege a special grievance where the underlying action is criminal in nature. Vickey v. Nessler, 230 N.J. Super. 141, 146-47, 553 A.2d 34 (App.Div.), certif. den. 117 N.J. 74, 563 A.2d 836 (1989). The elements necessary to sustain a malicious prosecution action arising out of a criminal proceeding have been set forth in Lind v. Schmid, 67 N.J. 255, 337 A.2d 365 (1975). It must be shown that: 1) the criminal action was instituted by the defendant against the plaintiff; 2) that it was actuated by malice; 3) that there was an absence of probable cause for the proceeding; and 4) that it was terminated favorably to the plaintiff. Id. at 262, 337 A.2d 365.
In Vickey v. Nessler, supra, 230 N.J. Super. at 147, 553 A.2d 34, we noted the reasons for requiring the additional element of special grievance in connection with redress for malicious pursuit of civil actions, distinguishing criminal matters. Here, we observe that the four Lind elements are met by the complaint's allegations, if accepted as true. Moreover, even where there is no arrest and the indictment is refused, being the target of a proposed indictment submitted to a grand jury by a prosecutorial authority is a not insignificant burden and humiliation.
It is true that our opinions in Rubin v. Nowak, 248 N.J. Super. 80, 82, 590 A.2d 249 (App.Div. 1991); and Piper v. Scher, 221 N.J. Super. 54, 58, 533 A.2d 974 (App.Div. 1987), contain dictum which mentions the element of special grievance in criminal matters. This appears not to have been deliberate, but an imprecise reliance upon Penwag Prop. Co., Inc. v. Landau, 76 N.J. 595, 598, 388 A.2d 1265 (1978). We are obliged to note that the majority opinion in Penwag, and indeed Judge Larner's opinion at 148 *395 N.J. Super. 493, 372 A.2d 1162 (App.Div. 1977), upon which the majority relied, made clear that the special grievance requirement was applicable to malicious use of process in civil proceedings, and not to malicious prosecution complaints arising out of a criminal proceeding.
There has been no intentional retreat from the Lind elements in our case law. See, e.g., Fleming v. United Parcel Service, 273 N.J. Super. 526, 529, 642 A.2d 1029 (App.Div.), certif. denied, 138 N.J. 264, 649 A.2d 1285 (1994). See also Williams v. Page, 160 N.J. Super. 354, 361, 389 A.2d 1012 (App.Div. 1978). As neither Rubin nor Piper purported to establish a new principle of law, we take note of what we deem to be an oversight, so that there may be no further confusion respecting the continued viability of the four Lind elements.
As to the Lind element of favorable disposition, New Jersey courts have consistently held the refusal of a Grand Jury to find an indictment to be a sufficient indication of favorable termination of the proceedings to enable a plaintiff to bring an action for malicious prosecution where the other elements are met. See, e.g., Rubin v. Nowak, supra, 248 N.J. Super. at 82, 590 A.2d 249; Mondrow v. Selwyn, 172 N.J. Super. 379, 385, 412 A.2d 447 (App.Div.), certif. denied, 84 N.J. 449, 420 A.2d 347 (1980); Galafaro v. Kuenstler, 53 N.J. Super. 379, 385, 147 A.2d 550 (App.Div. 1958); Weisner v. Hansen, 81 N.J.L. 601, 603, 80 A. 455 (E&A 1911); Apgar v. Woolston, 43 N.J.L. 57, 65 (Sup.Ct. 1881).
Under established New Jersey law, the count for malicious prosecution is sufficient, if the allegations are accepted as true, to survive an R. 4:6-2(e) motion by either defendant.
The foregoing conclusions make it unnecessary for us to consider defendants' argument that the action for malicious prosecution must fail because their absolute immunity to the defamation claim provides a complete defense for malicious prosecution. We note, however, that our courts thus far appear to have rejected the argument. See Rainier's Dairies, supra, 19 N.J. at 563-566, 117 *396 A.2d 889; Devlin v. Greiner, 147 N.J. Super. 446, 371 A.2d 380 (Law Div. 1977).

Conclusion
We reverse the judgment of dismissal with prejudice and remand for further proceedings.
NOTES
[1] A broader standard applies to motions for summary judgment in defamation actions brought under R. 4:46. See Fees v. Trow, 105 N.J. 330, 335, 521 A.2d 824 (1987); Maressa v. New Jersey Monthly, 89 N.J. 176, 196-197, 445 A.2d 376 (1982).
[2] Although Faiella urges that we consider his reliance upon advice of counsel, such factually sensitive issues are not appropriately considered on a R. 4:6-2(e) attorney are true, Galafaro v. Kuenstler, 53 N.J. Super. 379, 387, 147 A.2d 550 (App.Div. 1958), and we must accept the allegation of knowing falsity for purposes of the present appeal.