172 N.J. Super. 379 (1980)
412 A.2d 447
HYMAN MONDROW, PLAINTIFF-RESPONDENT,
v.
DONALD SELWYN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1980.
Decided February 21, 1980.
*380 Before Judges CRANE, MILMED and KING.
Robert B. Feuchtbaum argued the cause for appellant.
Richard J. Kozel argued the cause for respondent (Donald A. Rosenfelt, attorney).
The opinion of the court was delivered by KING, J.A.D.
Plaintiff Mondrow recovered verdicts in the Law Division of $5,000 in compensatory damages and $3,000 in punitive damages for the tort of malicious prosecution. Defendant Selwyn now appeals, raising eight contentions of error. We are satisfied that plaintiff failed to establish the element of favorable termination of the criminal prosecution for assault with intent to kill *381 which defendant commenced against him pursuant to N.J.S.A. 2A:90-2.[1] We find that the termination was indecisive at best.
The filing of the indictable charge against plaintiff arose out of an altercation which occurred in Pompton Lakes, Passaic County on March 15, 1976. Plaintiff Hyman Mondrow, whose legs had been amputated, had come to Pompton Lakes with his wife and two grown sons, Harlan and David, to pick up his car which had been specially adapted for his disability at the National Institute for Rehabilitative Engineering operated by defendant Selwyn. The altercation erupted while Mondrow was operating the car on a shake-down trip under Selwyn's supervision. At the termination of the tawdry tussle all of the principals retired to the local police station to file charges. Hyman and Harlan Mondrow filed nonindictable disorderly persons charges for simple assault against Selwyn, N.J.S.A. 2A:170 26.[2] Selwyn filed similar disorderly assault charges against David and Harlan Mondrow, and, of course, the subject indictable charge of assault with intent to kill against plaintiff Hyman Mondrow. The complaint signed by Selwyn charging the violation of N.J.S.A. 2A:90-2 stated as follows:
Upon oath says that, to the best of his knowledge, information and belief, the named defendant on or about the 15 day of March, 1976 in the Boro of Pompton Lakes, Municipal Code No. 1609, County of Passaic, N.J. did, while in the defendant's vehicle driving on Poplar Avenue, assault and strike the complainant using his hands, causing lacerations on both of the arms of the complainant, breaking his wrist watch, and verbally threatened to kill the complainant if the complainant did not get out of the car. After the complainant left the car, the defendant called for his son to kill the complainant.
*382 Selwyn described the circumstances under which he chose to charge plaintiff with the indictable offense under N.J.S.A. 2A:90-2 as follows:
Q [By plaintiff's attorney]. Finally, sir, the assault with intent to kill, did anybody advise you to make that charge?
A [defendant]. No.
Q. Did you consult a lawyer for instance before you made the charge?
A. The police and the Borough Prosecutor looked up the statute and everything else. I had consulted my private attorney by telephone and he said that I should stick to the facts and rely on the municipal people for the advice as to the applicable charge.
Q. Did anybody tell you that the charge carried with it a possible penalty in State's Prison of 12 years?
A. No, sir.
Q. Did you ever ask what it might be, that you were charging the man with?
A. I knew what I was charging him with, but I didn't know what the penalty was.
........
Q. And then, could you explain for the jury as best as you remember it, what transpired from the time you went into the police station and told whoever it was in charge there as to what happened until you signed the green piece of paper like this with the complaint on it.
A. Well, at first two of the police cleaned up my scrapes, cuts, and abrasions because there was dirt in them, it was obvious and I didn't want it to get infected. So, they took out a big first aid kit and used alcohol and other things in it to close both my arms and my leg [sic].
Then they took statements from me in my layman's language as to what had transpired. Somebody was always with me and stayed with me all the time, but there were a couple of people in and out of the room. I was in a separate room from the Mondrows. They went to look in their statute books to see which charges would be appropriate for the circumstances that I described. Then one of the officers came back and typed out the green sheets in his words. Then I signed it.
Later I found out the same thing was happening in the other room with the other people. When I got the charges against me and I relied solely on the police who filled this out who picked the statute numbers. It was my belief at the time, one of them I believe told me it was my belief that they had consulted either the Borough Prosecutor or the judge or someone with a lawyer's background. So, I did not question the statutes because the police told me they are *383 very careful about doing this so that people don't get accused improperly of the wrong thing because somebody was assaulted or injured or one thing or another. I didn't pick the statute.
Q. Did anybody tell you that what you had accused in effect was, you had accused Mr. Mondrow of an indictable offense?
A. Yes. They said it would probably be remanded by the Municipal Judge if there was probable cause to a Grand Jury, yes, sir.
Q. At that time, did you know what an indictable offense was?
A. No, sir.
Q. When you were served with your summons or complaints, did you think that your matters would go the Grand Jury?
A. No, sir. It was explained to me.
Following a preliminary hearing in the municipal court the indictable charge was presented to the grand jury which refused to indict plaintiff. A printed form letter from the county clerk reporting the "no bill" also contained the typed statement, "New Complaint filed in Magistrate's Court." The Municipal Court Clerk of the Borough of Pompton Lakes then wrote to Selwyn as follows:
Dear Mr. Selwyn:
I received notice from Thomas P. Chichi, Clerk to the Grand Jury that the Grand Jury on July 26, 1976 found a "No Bill" against Hyman Mondrow in the above matter.
The Grand Jury recommended that a new complaint be made against subject defendant under N.J.S. 2A:170-26 (A & B) for disposition by the Municipal Court.
If you wish to make out a new complaint, you may do so in the Pompton Lakes Police Department.
Also returned for disposition were the disorderly charges against Donald Selwyn #56-76 & #57-76, David M. Mondrow # 55-76 and Harlan J. Mondrow #54-76 which will be scheduled to be heard in this court soon.
 Very truly yours,
 s/
 Frank H. Bezold
 Court Clerk
Selwyn thereafter filed a disorderly complaint for simple assault against plaintiff.
On cross-examination Hyman Mondrow described the circumstances under which all of the disorderly persons complaints *384 were dismissed. He admitted his understanding that the matter was "returned to the municipal court" by the grand jury. Thereafter, all of the disorderly charges against Selwyn and the three Mondrows were dismissed without a hearing and, in Hyman's own words, "by agreement between the attorneys," and with his approval following consultation with counsel. He agreed that "there was no judicial determination of not guilty." He understood that the parties would be left to their civil remedies.
Our Supreme Court has stated that "malicious prosecution is not a favored cause of action because citizens should not be inhibited in instituting prosecution of those reasonably suspected of a crime." Lind v. Schmid, 67 N.J. 255, 262 (1975). The antithetical consideration is that "one who recklessly institutes criminal proceedings without any reasonable basis should be responsible for such irresponsible action." Ibid. Development of the law of malicious prosecution has been essentially a balancing of these considerations. Ibid. "The courts have always distrusted malicious prosecution actions and have retained a strong hand over them." Prosser, Torts (4 ed. 1971), § 119 at 846.
All authorities agree that a favorable termination of the criminal proceeding is elemental to the maintenance of the cause of action. See Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598 (1978); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139 (Ch. 1951), aff'd o.b. 9 N.J. 605 (1952); Williams v. Page, 160 N.J. Super. 354, 361 (App.Div. 1978), certif. den. 78 N.J. 395 (1979); Prosser, supra, § 119 at 838; 1 Harper and James, Torts, § 4.4 at 307 (1956); Restatement, Torts 2d, § 658 at 416 (1977). If the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused, the termination is viewed as indecisive and insufficient to support the cause of action. Restatement, Torts 2d, § 660(a) at 419 (1977). Having compromised for his peace in the criminal proceeding, the accused may not later contend that the proceedings *385 terminated in his favor. Id. at comment (c), § 660 at 420 (1977); Robinson v. Fimbel Door Co., 113 N.H. 348, 306 A.2d 768 (Sup.Ct. 1973); cf. Fitzwater v. Tasker, 259 Md. 266, 269 A.2d 588 (Ct.App. 1970). Dean Prosser explains that a termination by reason of compromise into which the accused has entered voluntarily is insufficiently favorable for two reasons: "Sometimes it is said that this is an admission of probable cause; but the better reason seems to be that the accused has consented to a termination which leaves open the question of his guilt and possible conviction, and so he cannot take advantage of it, after the prosecutor has foregone the opportunity of proving that there really was guilt." Prosser, supra, § 119 at 840.
Against this background we have examined the apparently novel question of whether a felony-type assault charge, termed a high misdemeanor in this jurisdiction, which is "no-billed" by the grand jury but returned with a recommendation that it be treated as a simple assault under the disorderly persons statute and which is thereafter dismissed by an agreement of compromise, is a sufficiently favorable termination to maintain a cause of action for malicious prosecution. A no-bill upon presentation to a grand jury is universally recognized as a favorable termination. Restatement, Torts 2d, § 659(b) at 417; see Kearney v. Mallon Suburban Motors, 23 N.J. Misc. 83, 85, 41 A.2d 274, 275 (Cir.Ct. 1945); see, also, Galafaro v. Kuenstler, 53 N.J. Super. 379, 385 (App.Div. 1958). If we view this case as involving two separate and distinct charges, the one indictable and the other disorderly, with two terminations, the "no-bill" on the indictable charge would be sufficient to sustain the cause of action. If we view this case as involving a single, continuing criminal accusation with but a single termination plaintiff must fail as a matter of law because the charge against him was withdrawn by compromise and with his agreement, no doubt in mutual consideration for the withdrawal of all pending charges involving plaintiff, his sons and defendant Selwyn.
*386 This case essentially involves the peril of a layman who selects an inappropriate charge with at least some advice from the police. There is no doubt in law that the facts alleged by plaintiff in this complaint support a disorderly persons charge under N.J.S.A. 2A:170-26; it is equally obvious they do not support an indictable charge of assault with intent to kill under N.J.S.A. 2A:90-2. Defendant Selwyn's uncontradicted testimony demonstrates that he relied upon the police in picking the statute under which to make the charge. No doubt at the time he was angry at plaintiff and animated to a large extent by bad feelings toward him. But criminal charges are not usually leveled in the serene environment of the drawing room or tea parlor. Under his view of the facts he clearly had probable cause to level some charge.
Even trained lawyers and judges sometimes experience difficulty and disagreement determining which kind of an assault charge is supported by a given set of facts. For example, in State v. Crumedy, 76 N.J. 319 (1978), aff'g 144 N.J. Super. 25 (App.Div. 1976), six members of the Supreme Court divided equally on the question of whether defendant's conduct constituted indictable atrocious assault and battery "by maining or wounding" under N.J.S.A. 2A:90-1, or simple assault and battery under N.J.S.A. 2A:170-26, and defendant's conviction was affirmed. Defendant, under the pretense of performing medical tests, had inserted pins and needles into the arm or finger of three unsuspecting victims. See, also, State v. Edwards, 28 N.J. 292 (1958), where Justice Heher dissented on the issue of whether the assault was atrocious under N.J.S.A. 2A:90-1 and indictable, or merely a disorderly persons offense. The issue of whether assaultive conduct falls within N.J.S.A. 2A:90 2 as evincing an intent to kill or under N.J.S.A. 2A:170-26 is not always a simple one. In State v. Mergott, 140 N.J. Super. 126, 131 (App.Div. 1976), this court reversed a criminal conviction for assault with intent to kill, saying that the intent to kill must be concomitant and contemporaneous with the assault, must be *387 deadly in purpose, and both actuated and accompanied by a present intent to kill. We conclude that under the present facts, placing the defendant at the peril of civil liability for an improper charge selection when he at least in part relied on police advice is too onerous a burden to place on the unsophisticated. Even experienced and objective prosecutors are sometimes prone to overcharge. Our Supreme Court has encouraged prosecutors to "conscientiously refrain from seeking indictments where the circumstances fairly and justly call for disorderly persons proceedings in the municipal courts." State v. Saulnier, 63 N.J. 199, 208 (1973).[3] Cases are frequently returned from the grand jury for disposition as lesser-included offenses at the municipal court level. Any rule which would open the door to potential civil liability when charges are reduced for disposition at the municipal level would be counterproductive of the policy to encourage prosecution at the appropriate level.
Viewed realistically, this was a single criminal accusation. It was referred to the grand jury after a probable cause hearing in the municipal court, R. 3:4 3; R. 7:2. It was then referred back to the municipal court for disposition under the Disorderly Persons Act. It was thereafter dismissed by agreement and compromise. The termination of the criminal charge arising out of the altercation was not favorable to plaintiff but was indecisive or inconclusive because it was withdrawn or abandoned "pursuant to an agreement or compromise with the accused." Restatement, Torts 2d, § 660(a) at 419 (1977).
The judgment is reversed and judgment is to be entered for defendant.
NOTES
[1] "Any person who commits an assault with intent to kill ... is guilty of a high misdemeanor, and shall be punished by a fine of not more than $3,000, or by imprisonment for not more than 12 years, or both."
[2] "Any person who commits an assault or an assault and battery is a disorderly person." Punishment may not exceed six months, $500 or both. N.J.S.A. 2A:169-4.
[3] New Jersey's new Code of Criminal Justice, effective September 1, 1979, contains definitions of at least 11 types of simple or aggravated assaults classified as crimes of the second, third or fourth degree. Some of these descriptions of assaultive behavior are new to our jurisprudence and await judicial interpretation. N.J.S.A. 2C:12-1.