609 A.2d 79

STATE OF NEW JERSEY, PLAINTIFF, v. MARTIN WISHNATSKY, DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided June 29, 1990.

68

*Lawrence H. Posner*, Assistant Hudson County Prosecutor for the State of New Jersey, appearing for Plaintiff.

*Martin Wishnatsky, pro se,* appearing for Defendant.

GROSSI, J.S.C.

Defendant Martin Wishnatsky appeals to this court pursuant to *R.* 3:23–1 *et seq.* from a judgment of conviction entered against him on October 23, 1989 by the Jersey City Municipal Court. Defendant was prosecuted for actions allegedly in violation of *N.J.S.A.* 2C:33–7 (obstructing a public passage) occurring on June 24, 1989 in front of 710 Bergen Avenue, Jersey City, the site of Choices Health Services (hereinafter "Choices" or "clinic"), a division of Health Services of Hudson County. Defendant was arrested at the scene and charged on the complaint of Marilyn Bennett, the executive director of the Health Services agency. Defendant continues to assert that his actions should not expose him to liability under the statute because he was attempting to rescue the lives of unborn persons from death by abortion.

Upon defendant's conviction below, the municipal court imposed a fine of five hundred dollars ($500) and a VCCB penalty of thirty dollars ($30), which payment was automatically stayed by the filing of the notice of appeal. Defendant was also sentenced to one day in jail, with credit given for the partial day he had spent in custody following his arrest on the date of the incident.

At the trial *de novo* held before this court on Wednesday, April 25, 1990, defendant appeared *pro se,* as he had during the

proceedings below.[1] Assistant Hudson County Prosecutor Lawrence H. Posner appeared on behalf of the State.[2] At the close of the hearing, this court reserved its decision in order to reexamine the applicable facts and law.[3] This opinion amends a previous letter opinion rendered in this case which was issued by this court on June 22, 1990 and provided to the parties.

At the outset, it is important to keep in mind the scope of this court's responsibilities in conducting a trial *de novo*. This court's function is to determine this case anew based upon the record preserved by the municipal court below, giving due, although not necessarily controlling, regard to the opportunity which the court below had to judge the credibility of the witnesses. *State v. Johnson*, 42 *N.J.* 146, 157, 199 *A.*2d 809 (1964). Eight witnesses testified before the municipal court: Choices' employees Theresa Glover, Marilyn Bennett, Jennie Melendez and Margie Colon for the state, and Brother Harry

---

[1]This court notes with approval that the record reflects that the Honorable Alan Smith, J.M.C. fully advised defendant of his Sixth Amendment right to counsel, and that the court was assured that defendant had effected an intelligent, knowing and voluntary waiver of that right before the court would permit defendant to proceed and represent himself *pro se. See State v. Abbondanzo*, 201 *N.J.Super.* 181, 184, 492 *A.*2d 1077 (App.Div.1985).

[2]In papers filed by defendant on the date of the hearing, he makes reference to the fact that he had previously contacted the assistant prosecutor assigned to this matter in order to urge the assistant prosecutor to disassociate himself from this case for the sake of his own honor. This court was provided with a copy of the letter, dated January 8, 1990, which defendant had sent to the assistant prosecutor, comparing the position of the assistant prosecutor to that of German officials standing outside of Auschwitz and requesting that the assistant prosecutor excuse himself "from the disgrace of defending holocaust law ... as a matter of conscience—a Yom Kippur of the soul."

[3]Much of the information which defendant has presented to this court in support of his appeal, including affidavits, articles, newspaper clippings, excerpts from the Bible, and transcripts of testimony taken in other matters and other jurisdictions, was not presented to the municipal court below in the original proceedings and thus is not part of the record which this court may review during this trial *de novo. See R.* 3:23–8(a).

Brock, Elizabeth Hanussak, Walter Robokoff, and defendant for the defense.

Although the transcript does not contain any explicit credibility assessments by the lower court for each of the witnesses who testified, implicit in the municipal court's analysis is its impression that all witnesses were credible and that their respective testimonies were not tainted by impermissible bias or undue interest in the outcome of this case. This court similarly finds no reason to doubt the sincerity or credibility of any of the witnesses.

 This court is required to carefully examine the record as preserved in the transcript in order to conduct an independent fact-finding regarding defendant's guilt or innocence of the offense as charged. *State v. Ross*, 189 *N.J.Super.* 67, 75, 458 *A.*2d 1299 (App.Div.1983). This court will also examine certain procedural and evidentiary rulings made by the court below which may have had an impact on the manner in which defendant was able to develop his case, since defendant asserts that the rulings denied him the opportunity to elicit necessary facts in support of his statutory affirmative defense. If this court finds that there was error below, defendant must be allowed the opportunity to supplement the record before this court issues a final decision. See *R.* 3:23–8(a)(1).

 Once the record is found to be complete, then, if necessary, this court must exercise its independent judgment as to the appropriate sentence. *State v. States*, 44 *N.J.* 285, 293, 208 *A.*2d 633 (1965); *State v. Tehan*, 190 *N.J.Super.* 348, 350, 463 *A.*2d 403 (Law Div.1982); *R.* 3:23–8(e). However, this court may not impose a penalty greater than that previously imposed by the municipal court below. *State v. De Bonis*, 58 *N.J.* 182, 188, 276 *A.*2d 137 (1971).

In order to review the various evidentiary rulings made by the municipal court below and for the purposes of ultimately determining defendant's guilt or innocence after evaluating the

defenses which defendant has raised, this court now makes the following operative findings of fact:

On Saturday, June 24, 1989 at various times between 8:00 a.m. and 11:15 a.m., defendant was observed at 710 Bergen Avenue, Jersey City, blocking the entrance to the building by moving from side to side with his body and outstretched arms, preventing various persons from immediately entering the building. The building at 710 Bergen Avenue houses Choices, a division of Health Services of Hudson County.

Health Services of Hudson County is a family planning center which provides contraceptive, maternity, well-baby care and related counselling services for women and children. Choices is the pregnancy termination unit and is licensed by the State of New Jersey. Abortions are performed on the premises on Saturdays; counselling is also provided on Saturdays with advice given to women regarding abortion as well as prenatal care, family planning and children. Abortions were scheduled to be performed at the clinic on Saturday, June 24, 1990 and were in fact performed on that date.

Access to the clinic is accomplished by ringing an outside bell by the front door at 710 Bergen Avenue and being buzzed in by a clinic employee who has a clear sight line from inside through windows to the visitor. At least some of the visitors to the clinic on Saturdays have made previous appointments to come in on that day. The door at 710 Bergen Avenue is the only entrance used on Saturdays and was the only entrance in use for visitors on June 24, 1990.

Theresa Glover, a counsellor employed by Choices, was one individual prevented from entering the building by defendant's actions on June 24, 1989. She attempted to enter the building at 8:00 a.m. for approximately fifteen minutes until she was forced to move defendant aside with her hand. She had requested defendant to move over so she could get in and defendant did not speak or otherwise respond to her request.

Other people were behind her at that time also attempting to enter the building.

Sometime later that morning, from inside the building, Ms. Glover observed defendant preventing a female accompanied by a male from entering the clinic by interjecting his body between them and the door and moving from side to side. Eventually, after about five minutes, she saw the male lifting defendant up and putting him down on the side of the door, thereby enabling himself and his female companion to enter the building.

In response to a telephone call at approximately 10:30 a.m. on the same date, Marilyn Bennett, executive director of Health Services of Hudson County and the complaining witness, arrived at Choices within a half hour and observed defendant standing on the step immediately in front of the door at 710 Bergen Avenue. She watched as defendant proceeded to block the ingress of an arriving couple for three or four minutes by moving back and forth across the doorway.

Jennie Melendez, the clinic manager for Choices, observed defendant blocking the doorway on June 24, 1989 and preventing a number of individuals from alternatively reaching the bell to ring it or entering the building after being buzzed in. Defendant's actions required her to get up and open the door for the visitors to allow them to enter. She could clearly see defendant through the windows. She recognized defendant as having been in front of the clinic on many Saturdays bearing signs, praying and handing out paraphernalia adorned with pictures of fetal parts.

In sum, the testimony showed and defendant does not deny that on Saturday, June 24, 1989, from approximately 8:00 a.m. until the time of his arrest, he intermittently stood in the doorway of 710 Bergen Avenue attempting to prevent various persons, both employees and visitors, from entering the Choices clinic.

Defendant raised certain procedural issues during the presentation of the case below which he renewed at the hearing

before this court. Specifically, in the form of a counterclaim, defendant has requested that this matter be removed to the United States District Court pursuant to 28 *U.S.C.* §§ 1343 and 1447, and that equitable relief should issue in the form of preliminary restraints barring the clinic and complaining witnesses from performing abortions during the pendency of this matter with entry of a subsequent permanent injunction pursuant to 28 *U.S.C.* § 1343(a)(4). Additionally, defendant has made a motion for a trial by jury. These requests were denied by the municipal court below.

Preliminarily, there is no provision in the court rules of this State which permits counterclaims to be filed in prosecutions such as the instant case. Pleadings in such actions are limited to a complaint, indictment or accusation if necessary, and a plea. See *R.* 3:10–1 (made applicable to municipal court proceedings by *R.* 7:1). However, since the merits of the issues raised by counterclaim were discussed during the proceedings below and argued during the hearing before this court, no prejudice will accrue to either party if this court proceeds to construe the counterclaim as if it was a procedurally proper motion.

■ This court notes that the controversy in the instant case concerns a defendant charged with a violation of a New Jersey statute for conduct occurring within the State of New Jersey. This criminal court has jurisdiction over the subject matter of this action, as did the municipal court below, pursuant to *N.J.S.A.* 2C:1–3(a)(1).

This court does not have any jurisdictional or legislatively granted authority which would permit it to transfer this action to the federal court system. Even if this court was so able to "remove" this matter to the U.S. District Court, the federal system would be unable to oversee a local prosecution of a state statute due to the limitations placed upon its jurisdictional powers by the abstention doctrine. See *Younger v. Harris,* 401

*U.S.* 37, 91 *S.Ct.* 746, 27 *L.Ed.*2d 669 (1971); LaFave & Israel, *Criminal Procedure* sec. 13.5 (West 1985).

Additionally, neither this court nor the municipal court below has any authority vested in it by common law, statute or court rule which would permit it to grant such injunctive relief as defendant seeks. See *R.* 4:52 (requiring that applications for temporary restraints be made to a civil court via an order to show cause and be supported by a sworn affidavit or verified complaint).[4]

█ As to the request for a jury trial: both the federal and state constitutions provide for the right to a jury trial for all persons accused of "crimes" and subject to "criminal prosecutions." Defendant stands charged with a violation of *N.J.S.A.* 2C:33–7, which is designated as a petty disorderly persons offense. In drafting Title 2C (the state criminal code), the State Legislature distinguished crimes from disorderly persons/petty disorderly persons offenses. *N.J.S.A.* 2C:1–4 clearly sets forth that:

a. An offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a crime within the meaning of the Constitution of this State....

b. An offense is a disorderly persons offense if it is so designated in this code or in a statute other than this code. An offense is a petty disorderly persons if it is so designated in this code or in a statute other than this code. *Disorderly persons offenses and petty disorderly persons offenses are petty offenses and*

---

[4]Defendant presumably sought to enjoin the clinic's activities in an effort to protect the lives of the unborn fetuses otherwise scheduled to be aborted during the pendency of this matter. Even if defendant had been successful in his attempts to remove this matter to the federal courts, it is not at all certain, particularly in the absence of a separately filed civil action, that he could be found to possess the Article III standing necessary in order to successfully request injunctive relief. *See Int'l Primate Protection League v. Adm'rs of Tulane Educational Fund,* 895 *F.*2d 1056, 1058–1061 (5th Cir.1990) (plaintiff organizations which were attempting to enjoin euthanasia of laboratory primates were found not to have standing despite claims that personal relationships would be irreparably disrupted, plaintiffs possessed long-standing and sincere commitment to the preservation of animal rights, and denial of action would leave animals with no advocates to protect them.)

*are not crimes within the meaning of the Constitution of this State. There shall be no right to indictment by a grand jury nor any right to trial by jury on such offenses.* Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime. [Emphasis added.]

The statutory language sets forth a dichotomy between crimes and petty offenses which has long been codified by the legislature and observed by the courts. *State v. H.J.B.*, 240 *N.J.Super.* 216, 218–19, 572 *A.*2d 1205 (Law Div.1990). The State Legislature has designated the offense with which defendant has been charged as a petty disorderly persons offense, not a crime. The Legislature has further specified that petty offenses are not crimes within the meaning of the constitutional provisions which grant defendants the right to a trial by jury. In fact, the language of the statute explicitly denies defendants charged with petty offenses the right to a jury trial because such prosecutions do not give rise to criminal disabilities.

This court's function is to enforce the legislative will literally, as expressed by the clear and unambiguous language contained in the statute. *State v. Pleva,* 203 *N.J.Super.* 178, 187–189, 496 *A.*2d 375 (App.Div.), *certif. denied* 102 *N.J.* 323, 521 *A.*2d 203 (1985); similarly *Howell Township v. Manasquan Regional Sewerage Authority,* 215 *N.J.Super.* 173, 508 *A.*2d 858 (App. Div.1987). The language of the code is clear. Neither this court nor any other court of this State has the authority to override the legislative mandate and grant defendant's petition for a trial by jury.

Furthermore, as defendant notes, the United States Supreme Court has ruled on this same issue in the cases of *District of Columbia v. Clawans,* 300 *U.S.* 617, 57 *S.Ct.* 660, 81 *L.Ed.* 843 (1937) and *Duncan v. Louisiana,* 391 *U.S.* 145, 88 *S.Ct.* 1444, 20 *L.Ed.*2d 491 (1968), holding in both that prosecutions of petty offenses do not require jury trials. Defendant is free to criticize and disagree with those opinions; however, this trial level court cannot overrule those cases and is bound to honor the decisions as *stare decisis.*

*N.J.S.A.* 2C:33–7, the statute which defendant is charged with violating, states, in relevant part, the following:

> a. A person, who, having no legal privilege to do so, purposely or recklessly obstructs any highway or other public passage whether alone or with others, commits a petty disorderly persons offense. "Obstructs" means renders impassable without unreasonable inconvenience or hazard....

*N.J.S.A.* 2C:2–2(b)(1) states that

> A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result.

The clinic doorway at 710 Bergen Avenue is used as an entrance by employees and visitors: it is a public passage within the meaning of the statute. Defendant barred the use of the passage, rendering it impassable to employees and visitors, by moving his body back and forth across it for up to fifteen minutes at a time. His actions caused unnecessary inconvenience to those people attempting to enter the building.

On at least two occasions during the morning of Saturday, June 24, 1989, a person was forced to use physical means in order to move defendant aside and gain entrance to the building. The inconvenience to those people in forcing them to so act in order to enter the building was not only unnecessary but unreasonable.

This court finds that defendant obstructed the door at 710 Bergen Avenue by rendering it impassable to persons wishing entry and causing them unreasonable inconvenience. By defendant's own testimony, his actions were specifically designed to prevent those persons from entering the clinic. His actions were done purposely.

Defendant contends that he had a legal privilege to purposely block the public entrance to Choices due to his inalienable right to protect the unborn human lives being threatened with death by the abortions performed by the clinic and, thus, his conduct is expressly excused by the language of the statute. To the best of this court's knowledge, the statu-

tory term "legal privilege" has never construed by any other court in this state.

As noted earlier in this opinion, a court's function of paramount importance is to enforce a statute which is clear and unambiguous according to its literal terms. *State v. Pleva, supra,* 203 *N.J.Super.* at 188, 496 *A.*2d 375. However, when the literal statutory language is unclear or ambiguous, a court is obliged to construe the statute in a common sense fashion which is consonant with its underlying legislative policy and purpose. *American Cyanamid Co. v. NJDEP,* 231 *N.J.Super.* 292, 312, 555 *A.*2d 684 (App.Div.), *certif. denied* 117 *N.J.* 89, 563 *A.*2d 847 (1989).

In determining the legislative policy and purpose of the statute which will enable this court to properly construe the language at issue, this court finds guidance in the 1971 Commentary to the section subsequently enacted as *N.J.S.A.* 2C:33– 7. The Commentary states that

[t]he purpose of this section is to prevent public inconvenience from unjustified obstruction of passage, while making it clear that mere assembly on sidewalks does not constitute an offense or subject the assemblers to police orders to move on or disperse. The key is in the definition of obstruction—"to render impassable without unreasonable inconvenience or hazard." Thus, as long as passersby may with reasonable safety and convenience get through or past the crowd, picketing, speechmaking or idling in groups will not be criminal....

In the Commentary, the drafters of this legislation express concern over the proper balance which must be struck between an individual's First Amendment rights to free speech and assembly, on the one hand, and the prevention of unjustified public inconvenience, on the other. See *State v. Greenberg,* 179 *N.J.Super.* 565, 570, 432 *A.*2d 955 (Law Div.1980).

This court finds that, consonant with the underlying legislative policy and purpose of the statute, the "legal privilege" mentioned in the statute refers to prior authorization to conduct First Amendment speech or assembly exercises which may result in the obstruction of public passages. The prior permission would officially indemnify participants from prose-

cution under this statute. If the drafters of the statute had not made provisions for a "legal privilege" exemption, participants in rallies whose organizers had previously received the appropriate permits to gather would nonetheless be in violation of *N.J.S.A.* 2C:33–7 if the gatherings unreasonably impaired the ability of passersby to pass through or past the crowd.

Testimony elicited at the trial below indicated that defendant was no stranger to clinic personnel and, in fact, was a familiar presence in the area on Saturdays, where he often picketed, prayed, and passed out various items. His "normal" activities were tolerated by the clinic as an expression of his First Amendment to right of free speech.

On the date at issue, defendant ventured beyond constitutionally protected speech and assembly activities by physically blocking the doorway to the clinic with his body, causing considerable inconvenience to employees and visitors. As noted recently by the United States Court of Appeals for the Second Circuit, in a matter concerning concerted efforts to "rescue" unborn children by holding large demonstrations and barricading entrances to abortion clinics,

> blocking access to public and private buildings has never been upheld as a proper method of communication in an orderly society. *See, e.g., Cameron v. Johnson,* 390 U.S. 611, 617, 88 S.Ct. 1335, 1338–39, 20 L.Ed.2d 182 (1968) (upholding law that prohibited picketing in front of courthouse unreasonably interfering with free ingress or egress); *Cox v. Louisiana,* 379 U.S. 559, 562–64, 85 S.Ct. 476, 479–81, 13 L.Ed.2d 487 (1965) (*Cox II*); *Cox v. Louisiana,* 379 U.S. 536, 555, 85 S.Ct. 453, 464–65, 13 L.Ed.2d 471 (1965) (*Cox I*) (demonstrators may not cordon off street or entrance to a building allowing no one to pass who refused to listen to them).

*New York State National Organization for Women v. Terry,* 886 *F.*2d 1339, 1364 (2d Cir.1990), appeal pending.

Defendant's actions in blocking the doorway of 710 Bergen Avenue on June 24, 1989 were not protected by the First Amendment. Further, his actions, undertaken without prior license or permission and would not serve to indemnify him from prosecution. This court therefore finds that the legal

privilege exemption to liability under this statute does not apply to this defendant.

Defendant contends that his conduct must be excused due to his duty and his right to protect human lives from destruction and death. In his "Memorandum of Law," defendant presents arguments which assert, *inter alia*, that:

I. Abortion is the destruction of human life;

II. New Jersey courts find that life begins at conception;

III. New Jersey law recognizes the civil rights of the unborn child from conception;

IV. The Declaration of Independence secures the unalienable right to life;

V. Article I, par. 1 of the New Jersey Constitution secures the unalienable right to life;

VI. Article I, par. 1 rights recognized [sic] by New Jersey Courts.

Defendant has further advised this court of his belief that the "elaboration of fundamental unwritten rights", such as the penumbral right to privacy, is an "arrogation [sic] of the amendment power" and is an impermissible "usurpation of legislative prerogative" which will inevitably lead to an "epidemic of fornication," "destroy[ing] the lives of men as well as those of women and children."

Additionally, defendant contends that the United States Supreme Court case of *Roe v. Wade,* 410 *U.S.* 113, 93 *S.Ct.* 705, 35 *L.Ed.*2d 147 (1973), legalizing abortions, is "presumptively unconstitutional and of no legal significance" since, *inter alia*, the " 'right to privacy' is an extraconstitutional invention in violation of Article V of the Constitution, the amendment clause," and, further, it is only an advisory opinion since there was no justiciable case or controversy before the Court.

This court takes note of the arguments which defendant has raised. Defendant has presented this court with a multitude of issues which stretch beyond the bounds of the present prosecution for a petty disorderly persons violation of *N.J.S.A.* 2C:33–7 and the pale of this court's jurisdiction. Defendant possesses standing to contest the validity of the statute under which he stands charged. However, this prosecution does not in itself

give defendant sufficient standing to challenge unrelated statutory and common law rulings.

Defendant errs when he asserts that the pivotal inquiry posed by this litigation is when life begins. The sole question before this court for determination is whether defendant's actions on June 24, 1989 were in violation of *N.J.S.A.* 2C:33–7 and, if so, whether his actions may be excused by a judicially recognizable reason, such as the affirmative defense which defendant has invoked.

Before this court can proceed to evaluate the affirmative defense which defendant has raised and make a final determination as to defendant's guilt or innocence, this court must address the evidentiary rulings made by the municipal court below. Defendant argues that the municipal court prevented him from fully developing the facts he needed to prove his affirmative defense and thus he was denied a fair trial. If evidentiary errors were made during the the trial below, defendant must have the opportunity to supplement the record with the wrongfully excluded evidence pursuant to *R.* 3:23–8(a)(1).

The evidentiary rulings which this court must review are the following: the failure of the court below to allow defendant to enter into evidence a page from the 1989 New Jersey Bell Telephone Book for Hudson County; the failure of the court below to allow defendant to enter into evidence and view a video-tape entitled "Eclipse of Reason"; and the failure of the court below to allow defendant to develop certain lines of questioning of the witnesses which defendant believes were necessary in establishing the facts supportive of his affirmative defense.

 Defendant attempted to enter into evidence page 104 from the Yellow Pages of the New Jersey Bell Hudson County telephone book on which appeared an advertisement for Choices. Defendant wished to admit the page as proof that abortions were performed at the clinic. The State objected to the admission since no foundation had been laid connecting the

clinic with the placement of the advertisement in the Yellow Pages. The municipal court sustained the objection, noting that a witness had already testified that abortions were performed at the clinic.

This court concurs with the municipal court's ruling concerning the inadmissibility of the Yellow Pages advertisement at that point of the proceedings. Defendant had not then attempted to authenticate the advertisement, which was necessary for its introduction into evidence, nor did he later attempt to do so. See *Evid.R.* 67. Further, even if the advertisement was admitted into evidence as tending to prove the content of that writing, all that it could have shown was that abortions are available at Choices, not that they were actually performed on the date of defendant's arrest.

Defendant subsequently explained that certain information contained in the advertisement was relevant in connection with the videotape which he wished the court to consider. Apparently, language in the advertisement indicates that pregnancy terminations are available at Choices up to the sixteenth week, in the second trimester. Defendant argues that the "Eclipse of Reason" videotape also shows a second trimester abortion and is relevant demonstrative evidence to assist the court's understanding that abortion terminates human life.

Assuming, *arguendo,* that the Yellow Pages advertisement was properly admitted into evidence and assuming, *arguendo,* that the veracity of the statements therein was accepted, the advertisement could still only be used to show that sixteen week second trimester abortions are available at the clinic, not that they are actually performed at the clinic, and not that any second trimester abortions were scheduled to be performed on the day which defendant chose to obstruct the door to the clinic.

Furthermore, the Yellow Pages advertisement would not alone constitute an adequate foundation for the introduction of the video. In a document which defendant filed with the County Clerk on the date of the hearing before this court,

defendant characterizes the subject matter of the video as an actual five-month or twenty-week abortion. If the information contained within the Yellow Pages advertisement for Choices is accurate, the clinic does not perform abortions past the sixteenth week of pregnancy. Therefore, this court does not see the probative value of the advertisement for use in laying the foundation for the video.

Defendant has attempted to present the "Eclipse of Reason" video as demonstrative evidence that a second-trimester fetus is human life and that a second-trimester abortion destroys that life. The State objected to the introduction of the video into evidence, contending, *inter alia*, that it might influence the court as factfinder in an emotional fashion and confuse the issues. The State further asserted that, since the defendant did not prove that the embryos being aborted in the tape were at the same developmental stage as the embryos which were scheduled to be aborted on June 24, 1989, the video is not relevant to this case. The municipal court sustained the State's objections to the video, holding that it would raise collateral issues in its mind as a trier of fact.

This court finds that the "Eclipse of Reason" video was properly excluded from evidence as not relevant. Defendant would not have been able to enter the video into evidence absent testimony that the developmental stage of the embryos in the video was substantially similar to those embryos not only scheduled for abortion on the date at issue but those specific embryos, if any, which defendant attempted to save from abortion by obstructing the clinic doors. Defendant did not elicit any factual testimony concerning the actual fetal age of the pregnancies scheduled to be terminated on June 24, 1989 which may have supported his position.

Further, after reviewing the testimony of the witnesses who appeared for the trial below, this court finds that none of the witnesses who appeared possessed adequate credentials which would have permitted them to render expert opinion testimony

concerning comparative fetal development. Without the testimony as described above, this court is not persuaded that the video is relevant and material to this matter.

This court will now review the evidentiary rulings made by the municipal court below during defendant's attempts to elicit testimony:

On cross-examination, defendant asked Ms. Bennett, executive director of Health Services, whether she had ever been present during an abortion. The court sustained the State's objection, finding the question not relevant. Defendant argued that the question was relevant to show that human life was being taken at the Choices facility. This court affirms the ruling made below since the question as phrased was without foundation which might establish the materiality of the inquiry. See *Evid.R.* 1(2).

Defendant's next question of Ms. Bennett was also the subject of an objection by the State which was sustained by the court below. Defendant wanted to know whether the clinic received Medicaid funding from the state of New Jersey in order to show that the clinic was operating under the color of state law for the purposes of the counterclaim.

This court has previously noted that a counterclaim is not procedurally proper in a case such as the one at bar. This court affirms the ruling of the municipal court since the question was not logically relevant as tending to prove a fact material to the present prosecution. See *Evid.R.* 1(2).

The municipal court properly sustained the State's objection to defendant's next question of Ms. Bennett as to her opinion concerning abortion as a taking of human life. Fact witnesses are not competent to give opinion testimony and the question exceeded the scope of direct examination. See *Evid.R.* 19, 56(1) and 56(2).

During the cross-examination of Ms. Melendez, the clinic manager, the court properly sustained the State's objec-

tion to defendant's question "Is it correct to say that the women who come to you for an abortion are generally carrying a live baby?" No foundation for the question had been laid to show that women came to the witness personally or that the witness was qualified and in a position to know the answer. See *Evid.R.* 19, 56(1) and 56(2). Further, the question as phrased was overbroad.

The State's objection to defendant's question of Ms. Melendez concerning the number of abortions scheduled was properly sustained. There was no foundation laid that the witness would have knowledge of such information, and the question as phrased was overbroad since defendant did not specify the Saturday to which he was referring. See *Evid.R.* 19. The question was also beyond the scope of the direct examination of the witness.

The municipal court properly sustained the State's objections to defendant's cross-examination of Ms. Colon, a counsellor at the clinic, asking if she had ever been involved in an abortion procedure in the clinic and if an abortion was in her opinion a taking of human life. As phrased, the first question was not relevant and the fact witness was not qualified to offer her opinion in response to the second question. See *Evid.R.* 19, 56(1) and 56(2).

The municipal court sustained the State's objection to defendant's direct examination question of Brother Harry Brock, a member of the Franciscan Friars of the Renewal of the South Bronx, asking whether Brother Brock had ever been successful in his attempts to prevent the destruction of the lives of unborn children scheduled to take place at the Choices clinic. Defendant wished to show the reasonableness of his own actions. This court affirms the ruling since the witness' degree of success would not render defendant's actions reasonable *per se*. The question was not relevant.

■ The municipal court sustained the State's objection to defendant's direct examination question of Brother Brock which asked whether Brother Brock's participation in counselling women in front of abortion clinics was an expression of Brother Brock's religious faith. Defendant argued that he wanted to demonstrate that a belief in Christ is a reasonable basis for the actions with which he is now charged. This court affirms the ruling since the witness is not a defendant in this action, the witness' actions are not now at issue, and the question is thus not relevant. See *Evid.R.* 19.

■ After qualifying Brother Brock as an expert in the field of his Christian order, the court did not permit him to explain the type of behavior that the witness would expect to see of a Christian person in front of an abortion clinic. The question as phrased was not relevant to the instant case, since no foundation had been laid that defendant was a member of the witness' Christian order. To the contrary, later in the proceedings defendant testified under oath that he was Jewish.

The municipal court sustained the State's objection to defendant's direct examination of Elizabeth Hanussak asking if she had any knowledge in her own life that a pregnant woman is carrying human life. Since the witness had not been qualified as an expert, she was properly prohibited from rendering opinion testimony. See *Evid.R.* 19, 56(1) and 56(2).

■ Defendant's final witness was Walter John Robokoff, pastor of the Fort Lee Gospel Church in Fort Lee, New Jersey. The municipal court sustained the State's objection to defendant's question asking the witness if he could describe the reasons why a person who sincerely believes in the Bible and is an adherent of the Christian faith would stand in the door of an abortion clinic. Although defendant had successfully elicited testimony concerning the witness' educational background, the defendant did not request the court to qualify the witness as an expert in Christianity. See *Evid.R.* 19, 56(1) and 56(2). Further, there was no previous foundation laid which would have

shown that defendant is such a person as described by the question, thereby establishing the relevancy of the inquiry. Only defendant's actions are at issue in this prosecution, not all Christians. As phrased, the question was properly excluded because it would have required the fact witness to speculate.

In sum, each evidentiary ruling made by the municipal court below during its hearing of this matter was a sound and correct exercise of proper judgment.

 A trial judge must accord to every person who is legally interested in a proceeding the full right to be heard according to law. Canon 3(A)(5), *Code of Judicial Conduct.* As is often said, each litigant deserves his day in court. Defendant has had his day to present his case and develop the record. The municipal court below gave defendant every permissible opportunity to set forth his position.[5] The evidentiary rulings made along the way were correct expressions of judgment, and this court has affirmed them for the reasons set forth above. Therefore, there is no need to now supplement the record pursuant to *R.* 3:23–8(a)(1).

 Defendant has asserted an affirmative defense under *N.J.S.A.* 2C:3–5, "Use of Force for the Protection of Other Persons." He claims that this affirmative defense justifies his conduct on June 24, 1989 in obstructing the door to the clinic since he was attempting to protect the unborn fetuses from death by abortion. The statute states, in relevant part,

a. ... [T]he use of force upon or toward the person of another is justifiable to protect a third person when:

---

[5]It is axiomatic that *pro se* litigants, such as defendant, are entitled to no less a degree of procedural solicitude than are litigants who are represented by counsel. It is fundamental that the court system is obligated to protect the rights of all litigants. *Pro se* litigants are entitled to no less a right to present their case to the court than are represented litigants; however, neither are they entitled to any greater rights. *Rubin v. Rubin,* 188 *N.J.Super.* 155, 159, 457 *A.*2d 12 (App.Div.1982).

(1) The actor would be justified under section 2C:3–4 in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect; and

(2) Under the circumstances as the actor reasonably believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) The actor reasonably believes that his intervention is necessary for the protection of other such person.

The three subsections under (a) must be read in conjunction with each other, due to the connective word "and," and must be read in conjunction with section 2C:3–4 which states, in relevant part, that

a. ... [T]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

Defendant did not use force in blocking the doorway of 710 Bergen Avenue. Defendant has not been charged with an offense of which force is an essential element. Whether or not life begins at the moment of conception and whether or not the unborn fetuses are persons in the eyes of the law and within the scope of the statute, under the circumstances of this case, defendant cannot avail himself of this statutory defense which concerns the use of force in protection of third parties. Further, notwithstanding defendant's assertion that "one can reasonably believe that the functions of all the personnel in that particular clinic are related to the performing of abortions in one manner or another," there was no evidence adduced during the trial below that the specific people whom defendant attempted to bar from entering the clinic were threatening to use force in any fashion.

In sum, this court must deny defendant's requests for removal of this action to federal District Court, for injunctive relief against the clinic during the pendency of this action, and for a jury trial. Further, this court has found no error in the evidentiary rulings made by the court below, and therefore the record is complete. Finally, after this court's considerations of the facts as contained within the record and the additional arguments propounded by both defendant and the State, this

court finds that defendant is not entitled to avail himself of the affirmative defense.

Therefore, it is the finding of this court that the evidence shows beyond a reasonable doubt that defendant Martin Wishnatsky is guilty as charged of violating *N.J.S.A.* 2C:33–7 by purposely obstructing the public doorway of Choices, at 710 Bergen Avenue, Jersey City, without legal privilege or justification to do so, on June 24, 1989.

Defendant must appear before this court on Tuesday, July 10, 1990 at 1:30 p.m. for the imposition of sentence. The parties will be free to speak concerning the applicable sentencing factors found at *N.J.S.A.* 2C:44–1(a) and (b).