295 N.J. Super. 51 (1996)
684 A.2d 530
THOMAS KLESH AND PATRICIA KLESH, PLAINTIFFS,
v.
VIRGINIA CODDINGTON, ET AL., DEFENDANTS.
ARMANDO MONTE CONSALVO, ET AL., PLAINTIFFS,
v.
VIRGINIA CODDINGTON, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
February 14, 1996.
*55 Michael S. Karpoff (Perl, Karpoff & Kessler, P.C.) for Plaintiffs Consalvo and Klesh.
Richard H. Thiele for Defendant Virginia Coddington.
Michael F. O'Gara (Siegel & Siegel) for Defendant Township of Bridgewater.
Jennifer Fisher Weiss (Ronan, Tuzzio, Giannone & McGuire, PA) for Defendant Lanigan.
Joanna L. Crosby (O'Donnell, Kennedy, Vespole, Piechta & Trifiolis) for Defendant Bobrow.
*56 HOENS, J.S.C.
Plaintiffs Klesh and Consalvo own property near that of defendant Coddington on Bartle Lane in Bridgewater. Disputes concerning the public or private nature of that road and concerning access to that road have persisted for over three decades. The consolidated complaints now before this court seek recovery from Coddington and others for defamation, malicious abuse of process, malicious prosecution and emotional distress arising out of municipal complaints filed against both plaintiffs Consalvo and Klesh by Coddington asserting that plaintiffs' actions obstructed Bartle Lane in violation of N.J.S.A. 2C:29-1, 2C:33-7 and 2C:33-12, all disorderly persons offenses. Now before the court are the motions for summary judgment filed by certain of the defendants. These motions and the result we reach cannot be understood without careful explanation of the relevant facts.
Coddington asserts that in 1991 she was seeking to sell two lots of property she owned on Bartle Lane. She believed that plaintiffs individually and collectively impeded access onto the road, discouraged interest in the lots by advising potential purchasers that the road was private, obstructed the road to prevent necessary repairs by Public Service, placed nails and tar in the roadway to discourage travel on the road, and otherwise interfered with her ability to sell her property. She consulted with an attorney, defendant Bobrow, who concluded that a 1964 consent order made the roadway a public one. Coddington then determined, with Bobrow's advice, to file municipal complaints against Klesh and Consalvo for their obstruction of the road. She filed complaints against all plaintiffs charging obstruction of a highway, interference with government functions and creation of a nuisance, all classified as disorderly persons offenses. Defendant Lanigan, in his capacity as Township Attorney, is alleged to have encouraged Coddington to file the criminal charges in furtherance of his alleged plan to secure a judicial determination that Bartle Lane is a public roadway and is alleged to have directed the Municipal Prosecutor to pursue the complaints in Municipal Court. At trial *57 certain charges were dismissed; the only successful charge was overturned on appeal.
In the complaints before this court, plaintiffs seek recovery from defendants for malicious abuse of process, malicious prosecution, emotional distress and defamation. As to Coddington, they contend that she knew the roadway was private, that she had no firsthand knowledge of any acts which would constitute violations of the statutes and that her decision to proceed with the complaints in the absence of such first hand information therefore makes her liable to them. In addition, the Consalvo complaint charges that Coddington defamed and libeled the Consalvos in a letter written to a local newspaper and the Klesh complaint charges Coddington with infliction of emotional distress and loss of consortium. Further, as to all defendants, both complaints contend that defendant Bobrow, Coddington's attorney, continued to prosecute the municipal court complaints even though he could not verify or corroborate the allegations, that he and defendant Lanigan, the township attorney, encouraged Coddington to file the complaints when each knew that Bartle Lane is a private roadway thus pursuing complaints without probable cause, and that Lanigan encouraged Coddington to write the defamatory letters to newspapers as well. Plaintiffs further contend that Bobrow improperly pressured Bridgewater's Municipal Prosecutor to pursue the charges and amended the charges thereafter without the knowledge or consent of his client. Finally, plaintiffs contend that Lanigan improperly advised township officials both before and after the municipal court trial that Bartle Lane is a public thoroughfare and that Lanigan caused these complaints to be pursued solely to achieve a judicial determination that the roadway is public. Because all of the claims were eventually resolved in plaintiffs' favor, they filed this complaint, seeking to recover against all defendants under theories of malicious prosecution and malicious abuse of process and for punitive damages, and against Coddington individually for defamation, and for infliction of emotional distress.
*58 Before the court are the motions of Bobrow, Lanigan and the Township for summary judgment on the claims relating to malicious prosecution and malicious abuse of process. While Coddington did not join in these motions, as the identical analysis applies to these claims as they relate to her as well, the relief we would grant, if any, must also extend to her. As to each of these motions, the critical issue before the court, and one not previously directly addressed in New Jersey, is the appropriate legal standard to be applied to these claims.
In New Jersey, there is a distinction between the elements of a malicious prosecution claim depending on whether the underlying action was criminal or civil in nature. Potts v. Imlay, 4 N.J.L. 377, 382, 386 (Sup.Ct. 1816). All parties agree that the elements of malicious prosecution based upon a prior prosecution which was criminal in nature were articulated in Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975). There the Supreme Court held that the test has four elements:
(1) that the criminal action was instituted by the defendant against the plaintiff,
(2) that it was actuated by malice;
(3) that there was an absence of probable cause for the proceeding and,
(4) that it was terminated favorably to the plaintiff.
In order to prevail, plaintiff must prove each of these elements; the absence of any one of these elements is fatal to successful prosecution of the claim. Penwag Property Co. v. Landau, 76 N.J. 595, 597, 388 A.2d 1265 (1978).
However, when the underlying action was civil in nature, the plaintiff is required to allege and prove the additional element of special grievance. The reasoning behind the added requirement of special grievance where the prior proceeding was civil in nature rests upon the different implications of a civil as opposed to a criminal charge. As the Appellate Division reasoned in Vickey v. Nessler, 230 N.J. Super. 141, 553 A.2d 34 (App.Div. 1989), those differences are significant. In a typical civil case, suit is instituted by filing a complaint and issuance of a summons. R. 4:2-2; R. 4:4. There is no arrest, no restraint of liberty, no deprivation of a *59 property right associated with the commencement of civil litigation, except in the rarest cases. In contrast, in a typical criminal case a defendant is usually arrested and suffers all the humiliation attendant thereto, including being held on bail, finger printed and photographed. The arrest alone therefore is perceived to be sufficiently egregious an injury to support the recovery without more. In contrast, the minimal impact of the commencement of civil litigation is insufficient for recovery without the additional showing of a special grievance. Id. at 147, 553 A.2d 34.
In the matter before this court, a considerable dispute has arisen over which standard applies, an issue which rests upon whether the municipal charges filed by defendants against plaintiffs were civil or criminal in nature. We have found no decisions directly on point, although several precedents offer guidance. In Vickey v. Nessler, 230 N.J. Super. 141, 553 A.2d 34 (App.Div. 1989), for example, as a part of the explanation for the rationale supporting different tests to be applied to civil and criminal matters, the court noted that "traffic offenses in this State are not criminal offenses and are tried in municipal courts in a summary manner". Id. at 148, 553 A.2d 34. Acknowledging that the prosecution of a traffic offense is regarded "as quasi-criminal to satisfy the requirements of fundamental fairness and essential justice to the accused" and that certain rights are accorded to defendants charged with a traffic offense including those protected by a Miranda warning, double jeopardy, and the reasonable doubt standard, "these procedural safeguards do not convert traffic offenses into criminal cases." Id. at 149, 553 A.2d 34. In Vickey, the Court held that a malicious prosecution claim based on the prosecution of a minor traffic complaint, although deemed quasi-criminal in nature, must be judged against the civil standard. Id. at 150, 553 A.2d 34.
More recently, the Law Division in State v. Wishnatsky, 258 N.J. Super. 67, 609 A.2d 79 (Law Div. 1990), discussed the question of whether disorderly persons and petty disorderly persons offenses are crimes for the purpose of the malicious prosecution *60 analysis. There the defendant was charged with violating N.J.S.A. 2C:33-7, one of the underlying charges in the present case. Recognizing the Legislature's intent to distinguish crimes from disorderly persons/petty disorderly persons offenses as set forth in the State Criminal Code, the Court found that the Legislature had designated the offense with which the defendant was charged as a petty disorderly persons offense, not a crime. Id. at 81, 609 A.2d 79. The court relied in large part upon the language of N.J.S.A. 2C:1-4(b), which states in relevant part:
Disorderly persons offenses and petty disorderly offenses are petty offenses and are not crimes within the meaning of the Constitution of this State. There shall be no right to indictment by a grand jury nor any right to trial by jury on such offenses. Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime.
Earlier guidance similarly concludes that disorderly conduct is quasi-criminal in nature and not strictly criminal, and is punishable summarily without indictment or trial by jury by fines or imprisonment. Sawran v. Lennon, 19 N.J. 606, 612, 118 A.2d 10 (1955); see In re Burke, 34 N.J. Super. 460, 463, 112 A.2d 807 (Cty.Dist.Ct. 1955). These opinions uniformly conclude that disorderly conduct is a minor offense punishable in a summary manner and is treated as quasi-criminal in nature. The distinction as it bears on the motion before this court is significant, for as the court recognized in In re Garofone, 80 N.J. Super. 259, 193 A.2d 398 (Law Div. 1963), a defendant convicted of a disorderly persons offense, quasi-criminal in nature, was "spared the brand of being adjudged a criminal, with all its political, business, and social implications, the punishment meted out to him is less severe than that imposed on corresponding crimes, and he is given the right to a speedy trial de novo in the county court". Id. at 271, 193 A.2d 398. Thus, as with traffic violations, disorderly persons offenses do not have the impact on a person's reputation or character that is attendant on a criminal charge. This analysis leads, at least initially, to the conclusion that the malicious prosecution motion based thereon must be tested against the civil rather than the criminal standard.
*61 Plaintiffs disagree and contend in support of their argument that the criminal standard is applicable to these municipal offenses. They rely upon Mondrow v. Selwyn, 172 N.J. Super. 379, 412 A.2d 447 (App.Div.), cert. denied, 84 N.J. 449, 420 A.2d 347 (1980) and Geyer v. Faiella, 279 N.J. Super. 386, 652 A.2d 1245 (App.Div. 1995). In Mondrow, the court did not address the question of which standard applies to a disorderly persons violation, but addressed only the question of whether the favorable termination element of a malicious prosecution claim had been satisfied. The specific issue decided there was "whether a felony-type assault charge, termed high misdemeanor in this jurisdiction, which is "no-billed" by the grand jury but returned with a recommendation that it be treated as a simple assault under the disorderly persons statute and which is thereafter dismissed by an agreement of compromise, is sufficiently favorable termination to maintain a cause of action for malicious prosecution". Mondrow v. Selwyn, supra, 172 N.J. Super. at 385, 412 A.2d 447. The court held that such a disposition did not constitute a favorable termination, one of the necessary elements to a malicious prosecution claim under either standard. Id. at 387, 412 A.2d 447. That opinion, however, did not determine or even analyze whether the nature of the underlying charge was essentially civil or criminal.
The plaintiffs rely upon Geyer for the proposition that the criminal standard applies to an offense even when there has been no arrest or deprivation of property. There, the plaintiff asserted a malicious prosecution claim based upon the defendant's having induced the U.S. Attorney's Office to file a criminal charge of making a death threat against plaintiff. The Appellate Division reversed the trial court's determination that a special grievance was necessary, because, it held, the underlying action was criminal in nature. Id. at 394, 652 A.2d 1245. The Court stated, "[e]ven where there is no arrest and the indictment is refused, being the target of a proposed indictment submitted to a grand jury by a prosecutorial authority is a not insignificant burden and humiliation". Id. The obvious import of Geyer is that the damage caused by being the subject of a grand jury probe and possible *62 indictment is commensurate with the damage caused by an arrest, in terms of its harm to a person's reputation. But the court reiterated that it is the fact and nature of the damage attendant upon such proceedings which relieves the movant of the added burden of demonstrating special damage.
We thus are faced with the opposing arguments of plaintiffs and defendants concerning whether the municipal charges filed here are criminal or not for the purpose of the malicious prosecution analysis. In this case Coddington, whether at the urging of Bobrow and Lanigan or not, filed three municipal charges and the matters were tried in municipal court, where the complaints were prosecuted by the municipal prosecutor. None of these plaintiffs was arrested or incarcerated, held on bail, fingerprinted or photographed. None of the charges, although all are classified as disorderly persons offenses under Title 2C and while a jail term could have been imposed in the event of a finding of guilt, includes the right to indictment by a grand jury. N.J.S.A. 2C:1-4(b). Thus, these charges are distinguishable from those in Geyer, where indictment was sought and the matter presented to a grand jury.
As the court in Vickey made clear, the test for purposes of a malicious prosecution claim is not what could have happened to the defendant, but what actually happened in the prior action. Vickey v. Nessler, supra, 230 N.J. Super. at 149, 553 A.2d 34. Here, the complaints were initiated and filed by Mrs. Coddington. Later, the complaint was amended by her private attorney defendant, Robert Bobrow. The Bridgewater Municipal Prosecutor later intervened and prosecuted the matter in Municipal Court. No indictment was issued, there was no arrest, no deprivation of liberty, nor interference with any of plaintiffs' property rights in this case. Because there is no inherent harm arising from the filing of a complaint alleging a disorderly persons offense, the charges are more civil in nature than criminal. As such plaintiffs are required to show some special grievance in order to proceed on their malicious prosecution claim.
*63 "Special grievance" consists of an interference with one's liberty or property and includes events such as the filing of a bankruptcy petition, granting an injunction, filing a lis pendens or wrongful interference with the possession or enjoyment of property. Penwag Property Co. v. Landau, supra, 76 N.J. at 597-98, 388 A.2d 1265. Counsel fees incurred to defend an action do not constitute special grievance, nor do mental anguish or emotional distress, nor the alleged loss of reputation flowing from the mere filing of any complaint. Brien v. Lomazow, 227 N.J. Super. 288, 303-04, 547 A.2d 318 (App.Div. 1988). In this case, the plaintiffs have not alleged any loss of the use or possession of their property, any restraint of their liberty, or any other factor that may constitute a special grievance; therefore, their claim of malicious prosecution must be dismissed as against each defendant.
Plaintiffs argue in their brief that defendants' motions for summary judgment do not address the separate and distinct legal theory of malicious abuse of process set forth in the complaints, and therefore, urge the court not to address that theory as a part of this motion for summary judgment. In response, defendant Lanigan argues that if the court rules in favor of defendants on the malicious prosecution claim, then plaintiffs' claim for malicious abuse of process must necessarily fail. In support of this argument, he contends that plaintiffs would be unable to demonstrate that defendant Lanigan had secured the issuance of process without reasonable or probable cause, thus rendering summary judgment in defendants' favor proper.
In distinguishing between malicious prosecution and malicious abuse of process, the Appellate Division in Tedards v. Auty, 232 N.J. Super. 541, 549, 557 A.2d 1030 (App.Div. 1989), recognized that the two torts require the plaintiff to prove different elements. "[P]rocess has not been abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing `further acts' whereby he demonstrably uses the process as a means to coerce or oppress the plaintiff." Id. at 550, 557 *64 A.2d 1030. In Tedards, the plaintiff alleged that after the issuance of a writ, the defendant knowingly and materially misrepresented to a judge the record of a previous family action in order to justify setting a high bail and threatened the plaintiff with reincarceration under the writ as a means of extorting a settlement and counsel fees, acts the court found were sufficient to establish the characteristic elements of an abuse of process. Id. at 551, 557 A.2d 1030.
In this case, there is no allegation by plaintiff of any further act after or other than the filing of the complaints and proceeding upon them. The allegation that the action itself was brought for an improper purpose is not enough. Unlike the evidence in Tedards, there is no further act, no threats or abuse of process whatsoever. That being the case, there is no set of facts alleged on which recovery for this separate theory can be had. The argument about whether the defendants had probable cause to file the charges or advise Coddington to do so is irrelevant; the only basis on which to recover for the different claim of malicious abuse of process would be an act or acts after the filing of the complaint "whereby [the defendant] demonstrably uses the process as a means to coerce or oppress the plaintiff". Tedards v. Auty, supra, 232 N.J. Super. at 550, 557 A.2d 1030. Here there is none.
Defendants also seek summary judgment in their favor on the claim for punitive damages. They argue that the conduct alleged in this case is not sufficiently egregious to warrant an award of punitive damages. Plaintiffs argue in response that there is sufficient evidence to warrant a determination that defendants Lanigan and Bobrow acted maliciously and for an improper purpose, thereby justifying an award of punitive damages. In support of this argument, plaintiffs contend that defendants filed the complaints without any evidence that the plaintiffs had violated any law, that the true purpose behind the filing of the complaint was to obtain a ruling in municipal court that Bartle Lane was a public thoroughfare, and that the filing of the complaint was *65 intended to punish plaintiffs for their opposition to making Bartle Lane a public roadway. These allegations, plaintiffs argue, are sufficient to support an award of punitive damages. Such conduct is outrageous, they argue because it totally disregards the rights of plaintiffs herein and disregards the effect that the criminal charges had upon them. To begin with, punitive damages cannot stand alone, separate and apart from any other cause of action. Thus, as to the defendants' other than Coddington, the punitive claim is moot.
Even were that not the case, punitive damages are awarded as punishment when a party's conduct is particularly egregious. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984). Such damages are warranted when a defendant's conduct is wantonly reckless or malicious. "There must be an intentional wrong in the sense of an `evilminded act' or an act accompanied by wanton and willful disregard of the rights of others." Tonelli v. Khanna, 238 N.J. Super. 121, 129, 569 A.2d 282 (App.Div. 1990), citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, supra, 97 N.J. at 49, 477 A.2d 1224. Here, the allegations fall short of the level required to proceed on a punitive damages claim. Whatever else may be true, the 1964 Consent Order by its very terms gives rights to "the public at large" to use Bartle Lane free of obstruction or interference by these plaintiffs. There is nothing malicious or egregious in the conduct of Bobrow, Lanigan or the Township as it respects their participation in Coddington's efforts to seek relief in municipal court for plaintiffs' acts. There is no set of facts alleged sufficient to support an award of punitive damages against these defendants.
Finally, we note that Coddington, for reasons wholly unexplained, did not join in the motions of Bobrow, Lanigan and the Township. Inasmuch as the foregoing analysis plainly applies to the claims against her as well, for the purpose of efficiency and economy, we extend our grant of partial summary judgment on the claims for malicious prosecution and malicious abuse of process to her as well. As to the claim for punitive damages, we *66 leave open the issue of whether any of the remaining claims against Coddington might properly support a punitive award.